# EXHIBIT 8



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/615,054 | 07/08/2003 | John Manos | 119166.001031 (50-03-002) | 7996 |

38851        7590        11/19/2008

Stephen R. Loe
Law Office of Stephen R. Loe
P.O. Box 649
Frisco, TX 75034

| EXAMINER |
|---|
| CHONG CRUZ, NADJA N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3623 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 11/19/2008 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

loe@friscopatents.com
laura.zavala@eds.com
edsipcorrespondence@eds.com

| **Office Action Summary** | Application No. | Applicant(s) |
| | 10/615,054 | MANOS, JOHN |
| | Examiner | Art Unit |
| | NADJA CHONG CRUZ | 3623 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>27 October 2008</u>.

2a)☐ This action is **FINAL**.      2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-18,20-30,32-35 and 38-41</u> is/are pending in the application.

     4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-18,20-30,32-35 and 38-41</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

     Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

     Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

     a)☐ All   b)☐ Some * c)☐ None of:

         1.☐ Certified copies of the priority documents have been received.

         2.☐ Certified copies of the priority documents have been received in Application No. _____.

         3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

     * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
     Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
     Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 10/615,054                                                            Page 2
Art Unit: 3623

## DETAILED ACTION

### Continued Examination Under 37 CFR 1.114

1.      A request for continued examination under 37 CFR 1.114, including the fee set forth in 37 CFR
1.17(e), was filed in this application after final rejection.  Since this application is eligible for
continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has been
timely paid, the finality of the previous Office action has been withdrawn pursuant to 37 CFR
1.114.  Applicant's submission filed on 27 October 2008 has been entered.

2.      Claims 1, 12, 23 and 34 have been amended.

3.      Claims 1-18, 20-30, 32-35 and 38-41 are currently pending and have been examined.

### Response to Amendment

4.      Applicant's amendment necessitated the new ground(s) of rejection presented in this Office
action.

### Claim Rejections - 35 USC § 101

5.      35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of
> matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the
> conditions and requirements of this title.

6.      Claims 1-11 are rejected under 35 U.S.C. 101 based on Supreme Court precedent, and recent
Federal Circuit decisions, the Office's guidance to examiners is that a § 101 process must (1) be
tied to another statutory class (such as a particular apparatus) or (2) transform underlying subject
matter (such as an article or materials) to a different state or thing. *Diamond* v. *Diehr,* 450 U.S.
175, 184 (1981); *Parker* v. *Flook*, 437 U.S. 584, 588 n.9 (1978); *Gottschalk* v. *Benson*, 409 U.S.
63, 70 (1972); *Cochrane* v. *Deener*, 94 U.S. 780,787-88 (1876).

Application/Control Number: 10/615,054                                      Page 3
Art Unit: 3623

**7.**     An example of a method claim that would <u>not</u> qualify as a statutory process would be a claim that recited purely mental steps. Thus, to qualify as a § 101 statutory process, the claim should positively recite the other statutory class (the thing or product) to which it is tied, for example by identifying the apparatus that accomplishes the method steps, or positively recite the subject matter that is being transformed, for example by identifying the material that is being changed to a different state.

**8.**     Here, applicant's method steps, fail the first prong of the new Federal Circuit decision since they are not tied to another statutory class and can be performed without the use of a particular apparatus. Thus, claims 1-11 are non-statutory since they may be preformed within the human mind.

**9.**     Nominal recitations of structure in an otherwise ineligible method fail to make the method a statutory process. See Benson, 409 U.S. at 71-72. As Comiskey recognized, "the mere use of the machine to collect data necessary for application of the mental process may not make the claim patentable subject matter." Comiskey, 499 F.3d at 1380 (citing In re Grams, 888 F.2d 835, 839-40 (Fed. Cir. 1989)). Incidental physical limitations, such as data gathering, field of use limitations, and post-solution activity are not enough to convert an abstract idea into a statutory process. In other words, nominal or token recitations of structure in a method claim do not convert an otherwise ineligible claim into an eligible one. Claims 2-11 inherit the same deficiencies as claim 1 and are therefore rejected for the same reasons as claim 1.

**Response to Arguments**

**10.**    Applicant's arguments received on 27 October 2008 have been fully considered but are not persuasive.

**11.**    With regard to claims 1, 12, 23 and 34, Applicant argues that the prior art of record, specifically (1) *no reference or combination of references show or suggest a method or apparatus by which contractually-specified service levels are ensured by monitoring service ticket aging* and (2) *Jones thus clearly teaches that the determination of when to report an aging customer complaint*

*is determined by the service center and* <u>not</u> *by any agreement or contract between the service provider and a customer* (Page 11, First Paragraph).

12.     In response to Applicant's argument (1), this argument is moot for the following reasons: claim 34 has been rejected on new grounds in light of Applicant's amendment. Please see the rejection below.

13.     In response to Applicant's arguments (2), with regard to claims 1, 12 , 23 and 34, the recitation *agreement or contract between the service provider and a customer* has not been given patentable weight because the recitation occurs in the preamble.  A preamble is generally not accorded any patentable weight where it merely recites the purpose of a process or the intended use of a structure, and where the body of the claim does not depend on the preamble for completeness but, instead, the process steps or structural limitations are able to stand alone. See In re Hirao, 535 F.2d 67, 190 USPQ 15 (CCPA 1976) and Kropa v. Robie, 187 F.2d 150, 152, 88 USPQ 478, 481 (CCPA 1951).

**Claim Rejections - 35 USC § 103**

14.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made.

15.     Claims 1, 12 and 23 are rejected under 35 U.S.C. 103(a) as being unpatentable over Jones et al. (US 6,219,648) in view of Scheifler et al. The X Window System, *ACM Transaction on Graphics,* Vol. 5, No. 2, April 1996.

**Claim 1:**

As per claim 1, Jones et al. teaches a method for monitoring service tickets for information technology service providers to ensure that levels of service required to be provided to a

Application/Control Number: 10/615,054                                    Page 5
Art Unit: 3623

      customer pursuant to an agreement between the customer and a service provider, are met, the
method comprising:

- inspecting a service ticket in a database to determine a deadline for when a problem
  associated with the service ticket must be resolved (col. 3, lines 11-20; col. 5, line 60-col.
  6, line 2; col. 6, line 35-col. 7, line 61; col. 8, line 55-col. 10, line 64 teaches time intervals
  corresponding to escalation levels for a trouble ticket; the escalation levels being defined
  based on the trouble ticket remaining unresolved for a time exceeding user specified time
  intervals; a ticket reporting and tracking system for inputting trouble tickets and keeping
  track of the ticket status in the repair process, where the information contained in the
  trouble report is stored in the ticket reporting and tracking system, data files are formatted
  into data records and send to a managing module, where the records are stored in
  memory and then evaluated against a configuration data file to determine if an alert
  should be transmitted);

- displaying, on a display device at the help desk, a graphical display populated with
  representations of service tickets that have reached a predetermined percentage of the
  time before their due date (col. 5, lines 51-53, which teaches that "the notification
  comprises an alphanumeric or digital page, an e-email message, or an X-Windows
  terminal display message." Where through an X-Windows terminal display "[t]he
  notification" which it "may contain various information, including the trouble ticket number,
  an escalation level, the date and time the ticket was first entered into the WFA system,
  the service type having trouble, customer name, current status of the ticket" (e.g., a
  predetermined percentage of the time before their due date) "and the identification (e.i.
  initials) of the technician involved in the service restoration effort.");

      Jones et al. teaches the use of X-Windows system to display graphically the notification
to a user with information related to a trouble ticket (Jones et al. col. 5, lines 49-60). Jones et al.
does not expressly teach that through the X-Window system a graphical display is populated with
representations of service tickets as claimed. However, Scheifler in an analogous art of displaying

user graphical interfaces through an X-Windows system for the purpose of enabling a user to modify an existing X-Windows system to populate a representation of service tickets (Scheifler et al, page 79, 1st ¶) as shown does, where Scheifler et al. teaches that a X-Windows system enables a user "to build applications and to manage desktop" and it provides "a wide variety of application and user interfaces to be built easily" (Scheifler et al, page 79, 1st ¶) .

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention to modify Jones et al. X- Windows system as taught by Scheifler et al. to graphically display a representation of tickets that have reached a predetermined percentage of the time before their due date because Scheifler X-Window system "provides high performance, high-level, device-independent graphics" (e.g. a graphical display). In addition, "desktop management can be custom-tailored to individual environments" (e.g., to display graphically a representation of tickets) (Scheifler et al, page 79, 1st ¶).

Furthermore, Jones et al disclose:

- determining a deadline approaching alert time at which a help desk user must be notified that the deadline for resolving the problem must be met (col. 3, lines 11-20; col. 5, line 60-col. 6, line 2; col. 6, line 35-col. 7, line 61 teaches time intervals corresponding to escalation levels for a trouble ticket; the escalation levels being defined based on the trouble ticket remaining unresolved for a time exceeding user specified time intervals);

- and alerting the help desk user that the deadline for resolving the problem is approaching when the deadline approaching alert time is reached (col. 11, line 13-col. 12, line 30 teaches when the alerting criteria for a ticket is satisfied, then notification should be sent to the appropriate management or personnel).

As per **claim 12**, it recites a computer program product in a computer readable media for use in a data processing system for performing the methods of claim 1.  Since Jones et al. teaches a computer program product in a computer readable media for use in a data processing system (col. 6, lines 5-35), claim 12 is rejected for the same reasons set forth above in claim 1.

As per **claim 23**, it recites a system in a computer readable media for use in a data processing system for performing the methods of claim 1.  Since Jones et al. teaches a system in a computer readable media for use in a data processing system (col. 6, lines 5-35), claim 23 is rejected for the same reasons set forth above in claim 1.

16.     Claims 2-11, 13-18, 20-22, 24-30, 32-33, 34-35 and 39-40 are rejected under 35 U.S.C. 103(a) as being unpatentable over Jones et al. (US 6,219,648) in view of Scheifler et al. **The X Window System**, *ACM Transaction on Graphics,* Vol. 5, No. 2, April 1996 as applied to claims 1, 12 and 23 above and further in view of Riley et al. (US Pub. No. 2002/0123983 A1).

**Claim 2**

As per **claim 2**, Jones et al. teaches:

- determining a status update interval for the service ticket (col. 7, lines 19-39 teaches the application receiving reports on a time interval);

- and responsive to a determination that the problem has not been resolved by the deadline, determining a first status update alert time to alert the help desk user (vol. 7, lines 19-61 teach that the interval should be predefined and publicly known because a configuration data file for alerting contains time periods for alerting based upon this interval where once the time duration of other alerting criteria has been satisfied, the module requests an alert to be sent to the appropriate personnel).

Jones et al. does not expressly teach alerting the help desk user to then send a status update to the customer.  However, Riley et al. in an analogous art of implementing service desk capability for the purpose of sending a status update to the customer (paragraphs 136-137), Riley et al. teaches alerting the help desk user to send a status update to the customer (paragraphs 136-137 teach the exceeding a target time and sending a notification to a personnel who will be assign the problem, where paragraph 144 teaches that as service requests are escalated, or as they exceed target time and are assigned a higher tier operator in which notifications are sent to the new personnel, the Service Desk, or the personnel, needs to communicate the status with the customer).

It would have been obvious to one of ordinary skill in the art to include in the method monitoring progress of customer generated trouble tickets of Jones et al. the ability to send a status update to the customer in response to ticket escalation as taught by Riley et al. since the claimed invention is merely a combination of old and well known elements, and in the combination, each element merely would have performed the same function it did separately, and one of ordinary skill in the art would have recognized that the results of the combination were predictable.

**Claim 3:**

As per **claim 3**, Jones et al. teaches alerting the help desk user as recited above in claim 1.

However, Jones et al. does not expressly teaches alerting the help desk user that a status update is approaching when the first status update alert time occurs.  Riley et al. teaches alerting the help desk user that a status update is approaching when the first status update alert time occurs (paragraph 144).

It would have been obvious to one of ordinary skill in the art to include in the method monitoring progress of customer generated trouble tickets of Jones et al. the ability to send an alert that a status update is necessary as taught by Riley et al. since the claimed invention is merely a combination of old and well known elements, and in the combination, each element merely would have performed the same function it did separately, and one of ordinary skill in the art would have recognized that the results of the combination were predictable.

**Claim 4:**

As per **claim 4**, Jones et al. teaches responsive to a determination that the problem has not been resolved after a time has passed, determining a time to alert the help desk user as recited above in claim 1.  However, Jones et al. does not teach the time being a status update time or determining a time to alert the help desk user that a time to provide a new status update to the customer is approaching and alerting the help desk user prior to the time to provide the new status update.

Riley et al. teaches time being a status update time and determining a time to alert the help desk user that a time to provide a new status update to the customer is approaching and alerting the help desk user prior to the time to provide the new status update (paragraphs 77-82 teach reminding personnel when to escalate incidents, when to provide status information to users, and when service levels are not being met; Fig 12 teaches notifying or alerting of escalation and contacting the customer as part of the whole service request escalation process, or rather alerting of escalation, which includes a new status update).

It would have been obvious to one of ordinary skill in the art to include in the method monitoring progress of customer generated trouble tickets of Jones et al. the ability to alert of a status update time and providing new status updates to the customer as taught by Riley et al. since the claimed invention is merely a combination of old and well known elements, and in the combination, each element merely would have performed the same function it did separately, and one of ordinary skill in the art would have recognized that the results of the combination were predictable.

**Claim 5:**

As per **claim 5**, Jones et al. teaches alerting the helpdesk user that the deadline for resolving the problem is approaching when the deadline approaching alert time is reached comprising sending an alert wherein the alert includes an identity of the service ticket (col. 11, line 35-col. 12, line 11 teach the alert message or notification including the ticket number). However, Jones et al. does not expressly teach the alert including the deadline for when a problem associate with the service ticket must be resolved.

Riley et al. teaches an alert including the deadline for when a problem associated with the service ticket must be resolved (paragraph 79 teaches reminding personnel when to escalate incidents and when service levels are not being met; paragraph 143 teaches as soon as a problem cannot be resolved in the targeted service levels is will be escalated, service requests are escalated if SLAs are likely to be impacted, where the escalation should be configured to

occur well before the actual SLA targets are passed, escalation includes the notification of the assignee and the next level of management, Fig. 12).

It would have been obvious to one of ordinary skill in the art to include in the method monitoring progress of customer generated trouble tickets of Jones et al. the ability to include the deadline as taught by Riley et al. since the claimed invention is merely a combination of old and well known elements, and in the combination, each element merely would have performed the same function it did separately, and one of ordinary skill in the art would have recognized that the results of the combination were predictable.

**Claim 6:**

As per **claim 6**, Jones et al. teaches an alert as recited above in claim 1 and further the alert being in a window (col. 2, lines 15-33). However, Jones et al. does not expressly teach the alert comprises a pop-up window.  Riley et al. teaches an alert comprising a pop-up window (paragraph 137).

It would have been obvious to one of ordinary skill in the art to include in the method monitoring progress of customer generated trouble tickets of Jones et al. a pop-up window as taught by Riley et al. since the claimed invention is merely a combination of old and well known elements, and in the combination, each element merely would have performed the same function it did separately, and one of ordinary skill in the art would have recognized that the results of the combination were predictable.

**Claim 7:**

As per **claim 7**, Jones et al. teaches an alert to the help desk user's data processing system as recited in claim 1.  Further Riley et al. teaches the alert being a pop-up window as recited above in claim 6.  However, neither Jones et al. nor Riley et al. expressly teach the pop-up window is displayed on top of all other windows that are open on the data processing system.  Examiner takes Official notice that a pop-up window being displayed on top of all other windows that are open on a data processing system is old and well known in the art.  Thus, it would have been obvious to one of ordinary skill in the art to include the pop-up window being displayed on top of

all other windows in order to more efficiently generate a notification to alert personnel or management that outages exist that have exceeded predefined time limits of intervals (see Jones et al., col. 1, line 65-col. 2, line 2).

**Claim 8:**

As per **claim 8**, Jones et al. teaches the alert comprises an audio alert (col. 2, lines 15-33 teaches the alerts being page notifications, which are audio alerts).

**Claim 9:**

As per **claim 9**, Jones et al. teaches the alert comprises a graphical alert (col. 2, lines 15-33 teach the alerts being alphanumeric, e-mail, an X-window terminal message, or graphical alerts).

**Claim 10:**

As per **claim 10**, Jones et al. teaches a deadline for when a problem associated with the service ticket must be resolved as recited in claim 1.  However, Jones et al. does not expressly teach the deadline for when a problem associated with the service ticket must be resolved is determined by consulting a ticket severity table.

Riley et al. teaches teach the deadline for when a problem associated with the service ticket must be resolved is determined by consulting a ticket severity table (paragraphs 116-123).

It would have been obvious to one of ordinary skill in the art to include in the method monitoring progress of customer generated trouble tickets of Jones et al. the ability to determine a deadline by consulting a ticket severity table as taught by Riley et al. since the claimed invention is merely a combination of old and well known elements, and in the combination, each element merely would have performed the same function it did separately, and one of ordinary skill in the art would have recognized that the results of the combination were predictable.

**Claim 11:**

As per **claim 11**, Jones et al. does not teach the ticket severity table is populated in accordance with a level of service agreement between the customer and the information technology provider. Riley et al. teaches the ticket severity table is populated in accordance with a level of service

agreement between the customer and the information technology provider (paragraphs 116-123; 61; 81).

It would have been obvious to one of ordinary skill in the art to include in the method monitoring progress of customer generated trouble tickets of Jones et al. the ability to determine a deadline by consulting a ticket severity table populated in accordance with a level of service agreement as taught by Riley et al. since the claimed invention is merely a combination of old and well known elements, and in the combination, each element merely would have performed the same function it did separately, and one of ordinary skill in the art would have recognized that the results of the combination were predictable.

**Claims 13-18 and 20-22:**

As per **claims 13-18 and 20-22**, they recite a computer program product in a computer readable media for use in a data processing system for performing the methods of claims 2-11.  Since Jones et al. teaches a computer program product in a computer readable media for use in a data processing system (col. 6, lines 5-35), claims 13-18 and 20-22 are rejected for the same reasons set forth above in claims 2-11.

**Claims 24-30 and 32-33:**

As per claims **24-30 and 32-33**, they recite a system in a computer readable media for use in a data processing system for performing the methods of claims 2-11.  Since Jones et al. teaches a system in a computer readable media for use in a data processing system (col. 6, lines 5-35), claims 24-30 and 32-33 are rejected for the same reasons set forth above in claims 2-11.

**Claim 34:**

As per claim 34, Jones et al. teaches a system for monitoring service tickets in order to provide reminders to a help desk user of impending times for actions, the times actions being provided according to a level of service required to be provided to a customer pursuant to a contract between the customer and a service provider, the system comprising:

- a monitoring server; a database; and a help desk client (col. 6, line 5-col. 8, line 32 teach a tracking system, or a monitoring server, storing the trouble tickets in data records, or a

database; and col. 11, lines 35-54 teach alerting going to the appropriate personnel, or a help desk client);

- the database stores tickets and information regarding ticket types, ticket severities for actions to be performed for each of the ticket types and ticket severities (col. 11, lines 35-66 teach the report information containing information including type of service required, or ticket type, ticket duration, status, position, escalation levels, or time for actions to be performed for each ticket, which includes ticket type; col. 15, lines 35-44 teach that the severity of repair work can be indicated in the report as well);

- the monitoring server monitors tickets in the database, determines when time for actions are approaching, and sends alerts to the help desk client alerting the help desk user that a time to take a specified action is approaching (col. 3, lines 11-20; col. 5, line 60-col. 6, line 2; col. 6, line 35-col. 7, line 61 teaches time intervals corresponding to escalation levels for a trouble ticket; the escalation levels being defined based on the trouble ticket remaining unresolved for a time exceeding user specified time intervals; col. 11, line 13-col. 12, line 30 teaches when the alerting criteria for a ticket is satisfied, then notification should be sent to the appropriate management or personnel);

- the help desk client displays active tickets to a help desk user and provides alerts received from the monitoring server to the help desk user (col. 5, line 50-60 teaches displaying notifications including trouble ticket number, an escalation level, date and time, service type, status, etc).

Jones et al., teaches that the invention "is to satisfy customer requirements for timely, proactive and documented internal escalations" (page 2, lines 9-11). Jones et al., does not specifically teach the following limitation. However, Riley et al., in an analogous art of implementing service desk capability for the purpose of storing contractually required times (e.g., service level agreement) (Figures 2 and 6, ¶ 0116-0121) as shown does:

- and contractually required times (Figure 2 illustrates a "Central Service Desk Repository", which stores information related to problems and solutions and Figure 6, ¶ 0116-0121,

illustrate a service request logging and categorization, block 69, "Assign Priority to Service Request" where "the operator analyzes the service request in order to prioritize it. The resulting prioritization is used to classify the request against all other requests made by the Service Desk customers and determines the speed in which the service request should be handled" (e.g., contractually required times) "(according to defined Service Level Agreements or SLAs)." );

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention to store contractually required times (e.g., service level agreement), as taught by Riley et al.,  to improve Boyd, thereby giving the predictable result of setting out "the services to be performed and the target service levels to be achieved. These SLAs are designed for the user community and are written with the Service Desk customers in mind." (Riley et al., ¶ 0032).

**Claim 35:**

As per **claim 35**, Jones et al. teaches a time associated with the system (col. 5, line 50-col. 6, line 34).  However, Jones et al. does not expressly teach the time determined using a centralized clock.  Examiner takes Official notice that utilizing a centralized clock when time is recorded in a computer system is old and well known in the art.  Thus, it would have been obvious to one of ordinary skill in the art at the time of the invention to utilize a centralized clock in order to record the time as taught by Jones et al. in order to more accurately record the time of a trouble ticket and to track data modification (e.g., log files) related to the trouble ticket (Jones et al. col. 3, lines 5-10).

**Claim 39:**

Jones et al. disclose the following limitation:

- wherein the activities tickets displayed are only those that have reached a predetermined percentage of the time before their due date (col. 1 lines 65-67-col.2 lines 1-2 and col. 2, lines 23-34, which teaches that a notification is sent through the X-Windows system which is fully customizable as discussed above "to alert key personnel or management that outages (i.e. troubles) exist that have exceeded predefined time limits or intervals" (a

predetermined percentage of the time before their due date). Jones et al. teaches that the notification display only those ones that have exceeded a predefined time limit or intervals.);

**Claim 40:**

Jones et al. disclose the following limitation:

- wherein the percentage of time is 75% of the time specified in an associated LOS (col. 5, lines 41-44, which teaches that it "provides a management tool to alert recipients of trouble tickets having exceeded predefined time interval(s)" (e.g., a percentage of time) "without service resolution or repair");

Jones et al. does not expressly teach that the percentage of time is 75% of the time specified. However, Examiner takes **Official Notice** that it is old and well known in the art to set a predetermined period of time (e.g., 75% or less than 75%) in order to comply with the associated level of service by alerting recipients of trouble tickets. Therefore, it would have been obvious to a person of ordinary skill in the art at the time of the invention to set a 75% or less than 75% of the time specified (e.g., a predefined time interval) to improve Jones et al. thereby giving the predictable result of performing equally well by specifying a different percentage of time (e.g., less than 75%) in order to comply with an associated level of service by completing a service resolution or repair in less time.

17.    Claims 38 and 41 are rejected under 35 U.S.C. 103(a) as being unpatentable over Jones et al. (US 6,219,648) in view of Scheifler et al. The X Window System, *ACM Transaction on Graphics,* Vol. 5, No. 2, April 1996 in view of Riley et al. (US Pub. No. 2002/0123983 A1) as applied to claims 1-37 and 39-40 above and further in view of Quercia et al. The Definitive Guides to the X Window System, *O'Reilly & Associates, Inc.* Volume Three, Motif Edition, 1993.

**Claim 38:**

Jones et al. teaches the use of X-Windows system to display graphically the notification to a user. The combination of Jones et al. and Scheifler et al. does not teach the following limitation.

However, Quercia et al. in an analogous art of user graphical interfaces tool for the purpose to graphically display information in a grid format (Figure 6-7, page 147) as shown does:

- wherein the activities tickets are displayed in a grid (Figure 6-7, page 147, which it illustrates that X-windows system enables a user to graphically display information in a grid format);

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention to modify the X-Windows system to display the activities ticket in a grid as taught by Quercia et al., to improve the combination of Jones et al. and Scheifler et al., thereby giving the predictable result of providing an user friendly graphical representation of the activities tickets status, because X-Windows system allows "to display certain information about the individual characters" (Quercia et al., page 147, 2nd ¶).

**Claim 41:**

Jones et al. teaches the use of X-Windows system to display graphically the notification to a user. The combination of Jones et al. and Scheifler et al. does not teach the following limitation. However, Quercia et al. in an analogous art of user graphical interfaces tool for the purpose to minimize the display (page 8, Figure 1-2,) as shown does:

- wherein the display may be minimized at the election of the user (page 8, Figure 1-2, which it illustrates a "Minimize button" which is old and well known in the art);

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention to enable a user to minimize a display as taught by Quercia et al., to improve the combination of Jones et al. and Scheifler et al., thereby giving the predictable result of allowing a user to minimize the display through a minimize button.

Application/Control Number: 10/615,054                                           Page 17
Art Unit: 3623

Any inquiry of a general nature or relating to the status of this application or concerning
this communication or earlier communications from the Examiner should be directed to **Nadja
Chong** whose telephone number is **571.270.3939.** The Examiner can normally be reached on
Monday-Friday, 9:30am-5:00pm. If attempts to reach the examiner by telephone are
unsuccessful, the Examiner's supervisor, **BETH BOSWELL** can be reached at **571.272.6737**.

Information regarding the status of an application may be obtained from the Patent
Application Information Retrieval (PAIR) system. Status information for published applications
may be obtained from either Private PAIR or Public PAIR. Status information for unpublished
applications is available through Private PAIR only. For more information about the PAIR system,
see http://portal.uspto.gov/external/portal/pair <http://pair-direct.uspto.gov >. Should you have
questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at
**866.217.9197** (toll-free).

Any response to this action should be mailed to:

*Commissioner of Patents*

*P.O. Box 1450*

*Alexandria, VA 22313-1450*

or faxed to **571-273-8300**.

Hand delivered responses should be brought to the **United States Patent and
Trademark Office Customer Service Window**:

Randolph Building

401 Dulany Street

Alexandria, VA 22314.

/Nadja Chong/ Examiner, Art Unit 3623


/Beth V. Boswell/

Supervisory Patent Examiner, Art Unit 3623