COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street. 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

PHILLIP E. MORTON (*pro hac vice*)
(pmorton@cooley.com)
Reston Town Center, 11951 Freedom Drive
Reston, VA 20190-5656
Telephone: (703) 456-8000

HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
ANDREW C. MACE (284484)
(amace@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

Attorneys for Defendant
ServiceNow, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEWLETT-PACKARD COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SERVICENOW, INC., a Delaware Corporation,<br><br>Defendant. | Case No.   14-cv-00570-BLF<br><br>**DEFENDANT SERVICENOW, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. SECTION 101**<br><br>DATE:     January 29, 2015<br>TIME:     9:00 a.m.<br>CTRM:    3<br>JUDGE:   Beth Labson Freeman |

Case5:14-cv-00570-BLF   Document80   Filed01/21/15   Page2 of 16

**TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ..................................................................................................... 1

II. THE ASSERTED CLAIMS OF THE '802 AND '512 PATENTS ARE UNPATENTABLE ........................................................................................................ 1

    A. The Asserted Claims of the '802 and '512 Patents Claim Abstract Ideas .............. 1

    B. The Asserted Claims of the '802 and '512 Patents Do Not Claim Any Technical Improvement ........................................................................................ 4

III. THE ASSERTED CLAIMS OF THE '229 PATENT ARE UNPATENTABLE ............. 5

    A. The Asserted Claims of the '229 Patent Claim an Abstract Idea .......................... 5

    B. The Asserted Claims of the '229 Patent Do Not Add Any Inventive Concepts ................................................................................................................. 7

    C. The Asserted Claims of the '229 Patent Would Preempt the Abstract Idea ........... 8

IV. THE ASSERTED CLAIMS OF THE '683 PATENT ARE UNPATENTABLE ............. 8

    A. The '683 Patent Claims an Abstract Idea .............................................................. 8

    B. The Asserted Claims of the '683 Patent Do Not Disclose Any Inventive Concepts ............................................................................................................... 10

V. THE COURT SHOULD DECIDE THE ISSUE OF SUBJECT MATTER ELIGIBILITY NOW ................................................................................................... 11

VI. CONCLUSION ............................................................................................................ 12

**DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT UNDER SECTION 101**
**14-cv-00570-BLF**

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) .................................................................................................... *passim*

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ............................................................................................ 10, 12

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ................................................................................................................ 12

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) .............................................................................................. 12

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004) .................................................................................................. 2

*Cogent Med., Inc. v. Elsevier Inc.*,
    Nos. C-13-4479-RMW, C-13-4483, C-13-4486, 2014 WL 4966326 (Sept. 30, 2014) .......... 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    No. 2013-1588, 2014 U.S. App. Lexis 24258 (Fed. Cir. Dec. 23, 2014) ................................. 3

*Cyberfone Sys. LLC v. CNN Interactive*,
    558 F. App'x 988 (Fed. Cir. 2014) .............................................................................. 6, 8, 12

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ......................................................................................... 3, 4, 6

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    No. 2013-1505, 2014 U.S. App. LEXIS 22902 (Fed. Cir. Dec. 5, 2014) ................................. 5

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ................................................................................................................ 11

*DietGoal Innovations LLC v. Bravo Media LLC*,
    No. 13 Civ. 8391 (PAE), — F. Supp. 2d —, 2014 WL 3582914 (S.D.N.Y. July 8,
    2014) ....................................................................................................................................... 12

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014) .......................................................................................... 6, 11

*Enfish v. Microsoft Corp.*,
    No. 2:12-cv-07360-MRP-MRW, 2014 WL 5661456 (C.D. Cal. Nov. 3, 2014) ............... 8, 10

# TABLE OF AUTHORITIES
## CONTINUED

PAGE(S)

*I/P Engine Inc. v. AOL Inc.*,
  576 F. App'x 982 (Fed. Cir. 2014) .................................................................................... 11

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007) ............................................................................................................ 11

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*,
  132 S. Ct. 1289 (2012) ......................................................................................................... 4

*Research Corp. Techs. v. Microsoft Corp.*,
  627 F.3d 859 (Fed. Cir. 2010) ............................................................................................. 4

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
  511 F.3d 1132 (Fed. Cir. 2007) ......................................................................................... 11

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
  522 F.3d 1279 (Fed. Cir. 2008) ......................................................................................... 11

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316 (Fed. Cir. 2001) ......................................................................................... 11

*Ultramerical, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ....................................................................................... 4, 10

*VirnetX, Inc. v. Cisco Systems, Inc.*,
  767 F.3d. 1308 (Fed. Cir. 2014) .......................................................................................... 2

*Wolf v. Capstone Photography, Inc.*,
  No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014) .................. 12

**Statutes**

35 U.S.C. § 101 ............................................................................................................. 1, 11, 12

## I. INTRODUCTION

Distilled to their essence, the Subject Patents[1] claim nothing more than writing and following workflows (i.e., instructions), enforcing rules established for the workflows (i.e., complying with deadlines), and retrieving information from a repository (such as workflows). In an attempt rewrite HP's abstract claims to resemble something "technical", HP relies on a lengthy 61 page expert declaration that seeks to add complex details that are not recited in any of the challenged claims.[2] Unfortunately for HP, the claim language speaks for itself and cannot be changed by the arguments spun by its expert, leaving HP with claims that cover nothing more than the abstract ideas identified in ServiceNow's opening brief. Because all asserted claims of the '683, '802, '512 and '229 Patents satisfy both prongs of the *Alice* test, the Court should find them invalid for claiming unpatentable subject matter under 35 U.S.C. § 101.

## II. THE ASSERTED CLAIMS OF THE '802 AND '512 PATENTS ARE UNPATENTABLE

### A. The Asserted Claims of the '802 and '512 Patents Claim Abstract Ideas

Contrary to what HP suggests in its brief, workflows existed centuries before IT service management to organize the activities of groups of people. (*See* Declaration of Phillip Morton In Support of ServiceNow's Motion for Summary Judgment of Invalidity Under 35 U.S.C. Section 101 (Morton Suppl. Decl.") Ex. 17, (Introduction to Workflow) at 1.) Indeed, as far back as the Middle Ages, monks organized the copying of scriptures by assigning a page to copy, seeing that the work was completed properly, and tracking the completed pages. *See id.* Creating a "workflow" consists of inputting some information into a process, performing steps of that process, obtaining the results (or output) of those steps, and transitioning to other steps, until the process is complete. As even HP itself acknowledged back in 1997 (nine years before the effective filing date of the '802 and '512 Patents), workflows were applied to a wide variety of

---

[1] Collectively defined as U.S. Patent Nos. 8,224,683 (the "'683 Patent"), 7,890,802 (the "'802 Patent"), 7,610,512 (the "'512 Patent") and U.S. Patent No. 6,321,229 (the "'229 Patent").

[2] Dr. Menasce's 61 page declaration appears to be an attempt to avoid the Court's order requiring that HP's opposition "comply with the page limits set forth in the Civil Local Rules." ECF No. 78.

fields and applications, including banking, finance, insurance, health care, telecommunication, manufacturing and document management. (*See* Morton Suppl. Decl., Ex. 18 (Workflow Management: State of the Art vs. State of the Products) at 3). Likewise, as described by HP's patents, the alleged invention of the '802 and '512 patents is little more than applying the age-old concept of workflows to resolving IT incidents by creating, storing and executing workflows:

> "The present invention facilitates resolution of IT incidents by creating repair workflows, storing the repair workflows in a repair workflow repository, and/or subsequently, executing the repair workflows in the repair workflow repository."

'512 Patent, Col. 2:31-35. This summary statement of the alleged invention, which describes nothing more than applying the centuries-old process of using workflows to complete a task (here, IT incident repair) gives even greater weight to the conclusion that the '802 and '512 Patents are directed to unpatentable, abstract ideas. *See VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1318 (Fed. Cir. 2014) (*citing C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) (giving particular weight to statements in the Summary of the Invention because "[s]tatements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term")).

HP's arguments generally ignore the actual language of the claims in an effort to distract the Court from the abstract nature of them. First, HP complains that none of the asserted claims recite writing or following instructions. ECF No. 79 at 7. HP also complains that ServiceNow is ignoring what it calls "thorough descriptions of the various claim elements" in the specifications.[3] *Id.* But those supposedly "thorough descriptions" and claims specifically define "repair workflows" as writing and following "**a set of instructions** used by the system to resolve incidents." '802 Patent, Col. 3:26-27 (emphasis added). As laid out in detail in ServiceNow's opening brief,[4] every asserted claim of the '802 Patent is directed to the abstract idea of "defining

---

[3] As with all of the Subject Patents, HP never argues that claim construction is necessary for any term in the '802 and '512 Patents.

[4] HP falsely claims throughout its brief that ServiceNow did not address all of the claim limitations. While HP's complaint is curious, given its failure and the failure of its 61 page expert declaration to analyze almost any claim language, even a cursory glance at ServiceNow's opening brief demonstrates that ServiceNow addressed every limitation in every asserted claim in

a repair workflow" (or, using the words from the specification, defining a set of instructions). ECF No. 70 at 11-13. Likewise, the '512 Patent claims require resolving an IT incident using the repair workflow (the set of instructions) that was defined using the '802 Patent. ECF No. 70 at 13-16. These are unpatentable abstract ideas of defining and following instructions that have existed for decades. *See* ECF No. 70 at 11-12, 13-14.

Second, with no specification support and relying only on Dr. Menasce's bald speculation, HP argues that a "significant advantage of the invention is the ability to re-use" the workflows (sets of instructions) for different devices and workflows. But the claims do not recite the ability to reuse workflows, or the alleged benefit of doing that. And even if such a feature were reflected in the claim language (which it is not), the ability to re-use workflows for future IT incidents is also an abstract idea. The specification acknowledges that, well before the patent, workers manually reused workflows by reusing existing documentation and scripts: "According to conventional methods, the IT incidents are typically referred to the IT staff and handled manually by the IT staff with the assistance from documentation, knowledge bases and scripts . . . [t]he documentation, knowledge bases, and scripts also need to be manually updated periodically as new IT incidents keep occurring." '512 Patent, Col. 1:25-32. Indeed, it shares many similarities with the Middle Ages monks discussed above that copied scripture according to a time-tested workflow.

Finally, HP states that the '802 and '512 Patents recite "specific data structures and the manipulation of those data structures" and argues that the claims are analogous to the claims in the Federal Circuit's pre-*Alice* decision in *CyberSource*. Not so. The alleged "specific data structures" in the '512 patent,[5] such as the "repair frame" and "repair context" are nothing more

---

numerous claim charts and related analysis. HP's complaint is irrelevant, because the Federal Circuit has made clear that the court may conduct its patent eligibility analysis with representative claims. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, No. 2013-1588, 2014 U.S. App. Lexis 24258, at *10 (Fed. Cir. Dec. 23, 2014) ("The district court, however, correctly determined that addressing each claim of the asserted patents was unnecessary. . . . because all the claims are substantially similar and linked to the same abstract idea."))

[5] In addition, HP does not claim that any of these terms require any specific claim construction.

than generic components for applying the abstract workflow idea claimed in HP's asserted claims. They do nothing more than facilitate the execution of a workflow using a computer. '802 Patent, Col. 3:25-5:6.

HP's citation to *CyberSource* is also inapposite because the portion of the decision cited by HP discusses a different case, the pre-*Alice* decision in *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010), where the Court found a method for rendering images in a particular way patentable. HP does not explain how the asserted claims are in any way like those in *Research Corp.* HP also overlooks the result in *CyberSource* – the Federal Circuit found that the claims, which were directed to the "mere manipulation or reorganization of data," were **not** patentable. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373-77 (Fed. Cir. 2011). The same is true of all of HP's asserted claims.

### B. The Asserted Claims of the '802 and '512 Patents Do Not Claim Any Technical Improvement

All of the claims also fail the second Alice step since they add nothing technical. HP makes two main arguments in an attempt to overcome the Step 2 of the *Alice* test for the '802 and '512 Patents. First, without any concrete analysis, HP attempts to analogize the writing and following of instructions for a workflow to the rubber curing process approved by the Supreme Court in *Diehr* because HP's use of workflows "solves a problem rooted in computer technology." But HP's '802 and '512 patents do not solve a problem rooted in computer technology. Taking the old, well-known abstract idea of workflows, adding a generic computer, "while adding the words 'apply it' is not enough for patent eligibility." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014) (*quoting Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1290 (2012)). Moreover, subsequent Federal Circuit cases like *Ultramercial* are clear that merely adding a computer to an otherwise abstract idea is insufficient to make an abstract idea patentable. *Ultramerical, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) ("adding a computer to otherwise conventional steps does not make an invention patent-eligible . . . . [a]ny transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis.").

Moreover, while HP cites to the recent Federal Circuit decision in *DDR Holdings, LLC v. Hotels.com, L.P.,* No. 2013-1505, 2014 U.S. App. LEXIS 22902 (Fed. Cir. Dec. 5, 2014) to salvage its claims, HP does not analyze or explain why its claims are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm" of computer software. *See DDR Holdings,* 2014 U.S. App. LEXIS 22902 at *26. This is because they are not. *DDR* is not applicable to HP's claims because HP is merely "recit[ing] the performance of some business practice known from the pre-Internet world along with the requirement to perform it" on a computer. *See DDR Holdings,* 2014 U.S. App. LEXIS 22902 at *26. As discussed above and in the opening brief, HP's claiming of the use of workflows to organize activities is a long-standing concept that has existed since at least the Middle Ages.

HP's final argument is that the purported invention was a "success" in the industry, and as such "represent[s] an improvement over conventional practice." HP's misplaced analysis of commercial success is entirely faulty because it does not tie any of the alleged commercial success to any asserted claim of the '802 and '512 patents, or to any of the alleged technical improvements over the conventional practice, and as such should be ignored.

## III. THE ASSERTED CLAIMS OF THE '229 PATENT ARE UNPATENTABLE

### A. The Asserted Claims of the '229 Patent Claim an Abstract Idea

HP argues at length that the '229 Patent is not abstract because it describes "specialized data structures" that are purportedly "powerful software components for organizing, managing and using data in different ways." Tellingly, HP again barely even mentions, let alone analyzes, the actual language of the asserted claims. Instead, HP's argument draws almost entirely from the specification and Dr. Menasce's musings about how the examples discussed in the specification could be applied to an IT service management system. But "the name of the game is the claim" when analyzing subject matter eligibility. *See*, e.g., *Alice*, 134 S. Ct. at 2355 ("First, we determine whether the ***claims at issue*** are directed to one of those patent-ineligible concepts.") And the claims here are written so broadly as to encompass nothing more than abstract ideas.

Ignoring the claim language, HP argues that its abstract data structure is different because "different views can be created in the same application by simply re-arranging the container

1  definition nodes." ECF No. 79. But HP's argument is irrelevant, because the claims do not
2  recite "re-arranging the container definition nodes." But even if they did, the mere re-
3  arrangement of data is unpatentable. For example, in *Digitech*, the Federal Circuit held that
4  generating two data sets from existing information and "organizing this information into a new
5  form" was unpatentable. *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344,
6  1351 (Fed. Cir. 2014). Likewise, in *Cyberfone*, the Federal Circuit found that "the well-known
7  concept of categorical data storage, *i.e.,* the idea of collecting information in classified form, then
8  separating and transmitting that information according to its classification, is an abstract idea that
9  is not patent-eligible." *Cyberfone Sys. LLC v. CNN Interactive*, 558 F. App'x 988, 992 (Fed. Cir.
10 2014); *see also CyberSource*, 654 F.3d at 1373-77 ("[t]he mere manipulation or reorganization of
11 data" is insufficient to confer patent eligibility).

12 Just because the claims of the '229 patent use made-up terms such as "container definition
13 nodes," "derived containers" and "information model" does not mean those claims cover anything
14 non-abstract. These coined terms themselves reflect abstract ideas. The "information model"
15 describes how the data is hierarchically arranged in an information repository. ('229 Patent, Col.
16 4:23-29, 7:23-29.) There is nothing non-abstract about that; in fact, the patent makes clear that
17 the information model could apply to "manually maintained information repositories such as
18 index card files." ('229 Patent, Col. 15:20-22.) The "container definition node" is similarly
19 abstract – it contains information about how something will be organized and displayed, such as a
20 textual "label" or "display information" that says how many times the text should be "tabbed
21 over" to the right when shown. ('229 Patent, Col. 10:24-33, 11:10-12.) The "container definition
22 node" covers nothing more than the abstract idea of having information to specify the category
23 and/or layout of a real-world book, such as margins, typeface, borders, and categories. And the
24 "derived container," that simply displays the information to the user based on "label" and other
25 information in the "container definition node." ('229 Patent, Col. 7:35-45.)

26 HP incorrectly complains that ServiceNow does not identify a "container definition node,"
27 but it is clear from ServiceNow's analysis that the container definition nodes, for example,
28 correlate to the subject matter sections in the library (e.g., analytic geometries (section 516.3) or

metric differential geometries (section 516.37)).  ECF No. 70 at 19.  Building on this example, a "derived container" corresponds to the groups and subgroups of subject matters identified by the librarian.  *Id.*  Finally, HP complains that ServiceNow "fails to identify any element that can generate queries using selection criteria in a 'container definition node,'" but HP's complaint is irrelevant because the asserted claims do not recite "generating queries" or anything similar.  Although some claims recite a "selection criteria attribute," that feature is also abstract.  As explained in the specification, the "selection criteria attribute" is simply a piece of information that tells the system to extract some piece of information from the repository.  ('229 Patent, Col. 7:15-18, 8:59-61, 12:11-16.)  The selection criteria attribute is little more than the abstract idea of a person "filling in the blank" with a piece of information from another source.

**B.     The Asserted Claims of the '229 Patent Do Not Add Any Inventive Concepts**

Other than making generalized statements about how the specification of the '229 Patent describes "significantly more" than an abstract idea, HP's rebuttal fails because HP never addresses how the asserted claims themselves are directed to inventive technical concepts.  HP never identifies any specific computer technology in the asserted claims that transforms the abstract idea into a purportedly patent-eligible invention.  Nor could HP, because the asserted claims do not recite any computer technology other than generic "computer readable media" and "computer readable program code."  Alice, 134 S. Ct. at 2358 ("the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention").  Moreover, the specification confirms that the invention is not limited to any particular computer technology, stating that it is not even limited to generic databases because it can be used to "organize any kind of information repository."  '229 Patent, Col. 15:1-6.  As noted in ServiceNow's opening brief, the '229 Patent makes clear that the categories of information repositories discussed in the patent are exceptionally broad, including "non-automated" repositories, "such as library index cards comprising information like call numbers, publishers and authors."  '229 Patent, Col. 1:35-38.

### C. The Asserted Claims of the '229 Patent Would Preempt the Abstract Idea[6]

Relying solely on the speculation of its expert, HP argues that there is no preemption of the abstract idea of retrieving information from the claimed hierarchical file system because one could use other types of file systems, such as an indexed file system. ECF No. 79 at 20. But HP's analysis is wrong. The proposition that one can conceive of other ways of organizing data does not change the fact that HP's asserted patent, if not found unpatentable, would preempt the abstract idea of categorizing and organizing information in a hierarchy, much like the patents in the *Enfish* and *Cyberfone* cases, which invalidated patents that merely sought to claim information classification and storage. *See Enfish v. Microsoft Corp.*, No. 2:12-cv-07360-MRP-MRW, 2014 WL 5661456, at *36 (C.D. Cal. Nov. 3, 2014) ("Patent law should not protect inventions that do nothing more than implement longstanding ideas (like tables) to solve computing problems (like data storage) when those problems predate computing."); *Cyberfone*, 558 F. App'x. at 992 ("the well-known concept of categorical data storage, *i.e.,* the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible.")

## IV. THE ASSERTED CLAIMS OF THE '683 PATENT ARE UNPATENTABLE

### A. The '683 Patent Claims an Abstract Idea

As discussed in ServiceNow's opening brief, the asserted claims of the '683 Patent (which were already recognized by the PTO to cover abstract ideas) recite nothing more than the performance of long-known and abstract concept of monitoring deadlines and providing an alert when a contractual deadline is approaching. ECF No. 70 at 6-11. Rather than directly address the abstract idea identified by ServiceNow, HP attempts to rewrite the asserted claims of the '683 patent to make them appear less abstract by arguing that they claim an unclaimed "three-tiered computing architecture" comprised of a generic database, a generic monitoring server and a generic help desk client. This is a red herring. First, asserted claim 12 does not recite the

---

[6] HP makes similar arguments for the '802, '512 and '683 Patents, suggesting that so long as one does not practice the abstract idea, HP has not preempted the abstract idea. For the same reasons as discussed here for the '229 Patent, HP's argument is incorrect.

1    purported "three-tiered" architecture. Claim 12 is a computer program product (or Beauregard)
2    claim that merely recites the abstract idea claimed as a computer program.

3    With respect to asserted claim 32, HP does not argue that any of the components of the
4    purported "three-tiered computing architecture" have any special meaning requiring claim
5    construction. Instead, HP relies on its lengthy and improper expert declaration to spin arguments
6    that the three tiers of the "computing architecture" involve "specific computing components, each
7    used in a specific way." ECF No. 789 at 20-21. But none of the alleged specificity of the
8    "database," the "monitoring server" or the "help desk client" asserted by Dr. Menasce is
9    incorporated into any of the claim language, and HP does not contend that any of those terms
10   require construction to add those concepts. Moreover, the specification of the '683 Patent is very
11   clear that the "database," the "monitoring server" and the "help desk client" are not tied down to
12   any particular implementation. *See, e.g.*, '683 Patent, Col. 3:16-18 ("The IT help desk user 104
13   opens a ticket in a database 106, such as, for example, an Oracle database."); '683 Patent, Col.
14   5:30-35 ("Those of ordinary skill in the art will appreciate that the hardware depicted in FIG. 5
15   [the monitoring server] may vary . . . . [t]he depicted example is not meant to imply architectural
16   limitations with respect to the invention."); '683 Patent, Col. 6:22-30 ("Those of ordinary skill in
17   the art will appreciate that the hardware in FIG. 6 [the help desk clients 110 and 112] may vary
18   depending on the implementation . . . . [t]he depicted example is not meant to imply architectural
19   limitations with respect to the present invention.")

20   HP also lodges four complaints about ServiceNow's characterization of the abstract idea,
21   none of which have any merit.[7] First, HP argues that ServiceNow is "ignor[ing] the reality of IT
22   service management" because modern environments are large and complex and a person with a
23   notebook and bulletin board could not keep up. But HP's complaint has no merit, because all
24   HP's purported invention is doing is taking the abstract idea of keeping track of deadlines and

---

[7] HP also argues that ServiceNow's argument against patent eligibility of the asserted claims "rests largely" on that fact that previously asserted claim 1 was found unpatentable at the PTO. HP is incorrect. ServiceNow provided the example of claim 1's prosecution history to illustrate that even pre-*Alice*, the PTO was skeptical of the patent eligibility of the abstract idea claimed in the '683 patent.

automating it on a generic computer. This does not take the claims outside the realm of an abstract idea. *See, e.g.*, *Ultramercial*, 772 F.3d at 715, 717 ("adding a computer to otherwise conventional steps does not make an invention patent-eligible"). Second, HP asserts that it is solving a "computer-based" problem that arises from ITSM and proposes a solution with a system claiming a specific architecture. But again, as discussed above, the "specific architecture" claimed by HP is just a generic computing system without any concrete limitations. Third, HP argues that the '683 patent describes a process that is performed differently than by a human because it is more "flexible" and "scalable." But none of the alleged flexibility and scalability can be found anywhere in the asserted claims. All that is claimed is a generic computer system performing essentially the same tasks that HP's patent explains were previously performed manually. '683 Patent, Col. 4:23-26 ("The monitoring system of the present invention helps agents 104 focus more on their day to day activities rather than exerting manual effort to effectively manage Level of Service guaranteed to customer 102.") And fourth, HP argues that the process must be "fast to be useful" because a single human could not keep up. But again, simply putting an abstract process on a computer and speeding it up is insufficient to confer patent eligibility. *See Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible.").

### B. The Asserted Claims of the '683 Patent Do Not Disclose Any Inventive Concepts

HP makes a meager attempt to argue that the purported invention claimed in the '683 Patent is a technological improvement over the prior art, arguing that the claimed system is "more effective" and that the "three-tiered" system is "flexible and highly customizable" because a user can make changes to SLAs by updating a database. ECF No. 79 at 24. But making an abstract idea "more effective" because it was put on a computer is not sufficiently inventive to overcome the *Alice* test. Moreover, interacting with databases is not inventive. *See Enfish*, 2014 WL 5661456, at *7 ("Efficient location of data is an unremarkable feature of a data storage system, especially in the computing age."). Finally, HP's argument that the '683 Patent is analogous to

10.

DEFENDANT'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT UNDER SECTION 101
14-CV-00570-BLF

*Diamond v. Diehr* borders on frivolous. *Diehr* involved a particular method for changing the physical properties of rubber, 450 U.S. 175 (1981), a stark contrast to HP's method of keeping track of deadlines and sending reminders when deadlines are approaching.

## V.  THE COURT SHOULD DECIDE THE ISSUE OF SUBJECT MATTER ELIGIBILITY NOW

HP's argues that the Court cannot decide subject matter eligibility now because of purported factual disputes created by HP. HP is wrong. Subject matter eligibility is not an issue for the jury, but rather an issue of law for the Court to decide. *See, e.g., Digitech*, 758 F.3d at 1348. Indeed, Judge Mayer on the Federal Circuit has encouraged Courts to decide Section 101 challenges early in the case to avoid "unnecessary litigation, . . . trial and imposition on citizen jurors." *I/P Engine Inc. v. AOL Inc.*, 576 F. App'x 982, 992 (Fed. Cir. 2014) (Mayer, J., concurring).

In any event, HP's lengthy, but ultimately conclusory expert declaration from Dr. Menasce does not create any factual disputes that would preclude summary judgment. In *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), the Supreme Court held that a patentee cannot avoid summary judgment of invalidity by means of conclusory expert opinions. *See id*. at 426-27. Likewise, the Federal Circuit has held that "[b]road conclusory statements offered by [a patentee's] experts are not evidence and are not sufficient to establish a genuine issue of material fact." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001); *see also, e.g.*, *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1291 (Fed. Cir. 2008) (holding that testimony that simply recites an expert's "own reading of the specification" is "unhelpful"); *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1137 n.3 (Fed. Cir. 2007) (holding that conclusory "testimony as to how one skilled in the art would interpret the language in the specification is entitled to little or no weight").

Moreover, while HP never expressly argues that claim construction is necessary for any term in the asserted claims,[8] HP might contend that claim construction disputes should prevent

---

[8] HP suggests in a footnote that ServiceNow's IPR petition for the '229 Patent "demonstrates that several claim terms must be construed." ECF No. 79 at 18 n.5. However, HP never identifies

the Court from deciding summary judgment now. Neither the Supreme Court nor the Federal Circuit has held that claim construction is a prerequisite to the § 101 analysis. On the contrary, the Supreme Court in *Bilski v. Kappos* affirmed the invalidity of the claims at issue under § 101 without claim construction. *See* 561 U.S. 593, 609-12 (2010). The Federal Circuit and numerous district courts have also invalidated claims under § 101 without claim construction. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352-55 (Fed. Cir. 2014); *Bancorp*, 687 F.3d at 1273; *Cogent Med., Inc. v. Elsevier Inc.*, Nos. C-13-4479-RMW, C-13-4483, C-13-4486, 2014 WL 4966326, at *3 (Sept. 30, 2014); *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527, at *17-18 (C.D. Cal. Oct. 28, 2014); *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13 Civ. 8391 (PAE), — F. Supp. 2d —, 2014 WL 3582914, at *16 (S.D.N.Y. July 8, 2014); *see Cyberfone*, 558 F. App'x at 992 n.1 (non-precedential) (rejecting patentee's argument that "claim construction must precede the §101 analysis," where patentee "d[id] not explain which terms require construction or how the analysis would change.")

## VI. CONCLUSION

For the foregoing reasons and the reasons set forth in ServiceNow's opening brief, the Court should grant summary judgment and find that the asserted claims of the Subject Patents are invalid under 35 U.S.C. § 101.

Dated: January 21, 2015  COOLEY LLP

*/s/ Heidi L. Keefe*
Heidi L. Keefe
Attorneys for Defendant
ServiceNow, Inc.

---

any particular terms from the asserted claims of the '229 Patent that HP contends should be construed.

12.  **DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT UNDER SECTION 101**
**14-CV-00570-BLF**