COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street. 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

PHILLIP E. MORTON (*pro hac vice*)
(pmorton@cooley.com)
Reston Town Center, 11951 Freedom Drive
Reston, VA 20190-5656
Telephone: (703) 456-8000

HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
ANDREW C. MACE (284484)
(amace@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendant
ServiceNow, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEWLETT-PACKARD COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SERVICENOW, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 14-cv-00570-BLF<br><br>**DEFENDANT SERVICENOW, INC.'S BRIEF IN RESPONSE TO PLAINTIFF'S HEWLETT-PACKARD COMPANY'S PROPOSED CLAIM CONSTRUCTIONS PER THE COURT'S JANUARY 30, 2015 ORDER** |

**TABLE OF CONTENTS**

**PAGE**

I. PLAINTIFF'S PROPOSED CONSTRUCTIONS CONFIRM THAT THE PATENTS ARE INVALID .................................................................................... 1
   A. '683 Patent ............................................................................................. 1
   B. '512 and '802 Patents............................................................................. 3
   C. The '229 Patent ...................................................................................... 5
II. CLAIM CONSTRUCTION IS UNNECESSARY TO RESOLVE SERVICENOW'S MOTION ...................................................................................... 9
III. CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Alice Corporation Pty. Ltd. v. CLS Bank International*,
134 S. Ct. 2347 (2014) ............................................................................................ 3, 4, 5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada*,
687 F.3d 1266 (Fed. Cir. 2012) ......................................................................................... 9

*Bascom Research, LLC v. Facebook, Inc.*,
--- F. Supp. 3d __, ----, No. 12-cv-06293-SI, 2015 WL 149480,
(N.D. Cal. Jan. 5, 2015) ........................................................................................... 1, 8, 10

*CLS Bank Int'l v. Alice Corp.*,
717 F.3d 1269 (Fed. Cir. 2013) ......................................................................................... 3

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
No. 2013-1588, 2014 WL 7272219 (Fed. Cir. Dec. 23, 2014) ...................................... 9, 10

*CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*,
558 F. App'x 988 (Fed. Cir. 2014). .................................................................................... 8

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2013) ......................................................................................... 5

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014) ......................................................................................... 8

*Enfish LLC v. Microsoft Corp*,
--- F. Supp. 3d ----, No. 2:12-cv-07360-MRP-MRW, 2014 WL 5661456,
(C.D. Cal. Nov. 3, 2014)8) ................................................................................................ 8

*Parker v. Flook*,
437 U.S. 584 (1978) ........................................................................................................... 1

*Ultramercial, Inc. v. Hulu, Inc.*,
772 F.3d 709 (Fed. Cir. 2014) ........................................................................................... 9

**Statutes**

35 U.S.C. § 101 ........................................................................................................... *passim*

## I. PLAINTIFF'S PROPOSED CONSTRUCTIONS CONFIRM THAT THE PATENTS ARE INVALID

HP's proposed claim constructions attempt to create a façade of technical complexity where none exists. After avoiding almost any discussion of the actual claim language in its briefs and its conclusory expert declaration, HP now proposes paragraph long constructions for simple terms that are clogged with unnecessary language. But even if the Court assumes the correctness of HP's proposed constructions for purposes of this motion,[1] the '512, '802, '229 and '683 patents are still directed to nothing more than the abstract ideas of writing and following workflows (i.e., instructions), enforcing rules established for the workflows (i.e., complying with deadlines), and retrieving and displaying information from a repository. Because the patents are invalid even under HP's proposed constructions, the Court should find that the '512, '802, '229 and '683 patents invalid under for claiming patent-ineligible, abstract ideas.

### A.   '683 Patent

HP's proposed claim constructions for the '683 patent are perhaps the most puzzling of the ones it proposed in its February 6 submission. (ECF No. 89, at 3:16-27.) The Court correctly remarked that this patent "seems obvious and simple and what we call abstract." (01/29/2015 Tr. at 47:19-20.) Indeed, the asserted claims attempt to lay claim to the age-old idea of monitoring upcoming deadlines and alerting the user when a deadline is approaching, similar to subject matter the Supreme Court declared patent ineligible almost four decades ago. *See Parker v. Flook*, 437 U.S. 584, 594-95 (1978) (finding that a method of using computers to monitor and calculate alarms was patent ineligible under 35 U.S.C. § 101).

HP's proposed constructions attempt to inject needless complexity into the terms "monitoring server," "database" and "help desk client," in an attempt to create the illusion of a specific technical implementation. But all HP has done is take language that already exists in the "wherein" clause of claim 32 and paste it into its constructions, as shown below:

---

[1] When deciding Section 101 motions prior to claim construction, courts have invalidated patents based on the patent owner's proposed constructions. *See, e.g.*, *Bascom Research, LLC v. Facebook, Inc.*, --- F. Supp. 3d ----, No. 12-cv-06293-SI, 2015 WL 149480, at *10 (N.D. Cal. Jan. 5, 2015) (Illston, J.) ("[A]dopting Bascom's proposed constructions does not alter the Court's conclusion that the patents-in-suit claim ineligible subject matter.").

| Claim 32 "wherein" clause | Plaintiff's Proposed Constructions |
|---|---|
| wherein the database stores tickets and information regarding ticket types, ticket severities based on the contract, and corresponding contractually required times for actions to be performed for each of the ticket types and ticket severities; | Database: A structured set of data specifically configured to store tickets and information regarding ticket types, ticket severities based on the contract, and corresponding contractually required times for actions to be performed for each of the ticket types and ticket severities. |
| the monitoring server monitors tickets in the database, determines when times for actions are approaching, and sends alerts to the help desk client alerting the help desk user that a time to take a specified action is approaching; and | Monitoring Server: A server specifically configured to monitor tickets in the database, determine when times for actions are approaching, and send alerts to the help desk client alerting the help desk that a time to take a specified action is approaching. |
| the help desk client displays active tickets to a help desk user and provides alerts received from the monitoring server to the help desk user. ('683, | Help Desk Client: A client used by a help desk user specifically configured to display active tickets to the help desk user and provide alerts received from the monitoring server to the help desk user. |

It is hard to imagine how HP could continue to assert that "database," "monitoring server" and "help desk client" could transform the abstract idea into a patent-eligible application. As the table above confirms, HP's proposed constructions simply repeat language already in claim 32. HP apparently hopes that simply placing the words "specifically configured to" at the front of its three constructions gives them some illusion of technical specificity, but any such suggestion would be silly. <u>By failing to propose any limitations not already in the claim language, HP has effectively conceded that no claim construction is necessary to resolve the 35 U.S.C. § 101 issue with respect to the '683 patent</u>. The Court should therefore proceed to decision on the motion.

HP's proposed constructions, consistent with the existing claim language, describe the "database," "monitoring server" and "help desk client" in entirely functional terms and rely on unspecified and generic computer equipment. This is not surprising considering that the specification emphatically and repeatedly declares the server, database and client could be implemented using generic or conventional computing components. (*See, e.g.*, '683, 3:16-18 ("The IT help desk user 104 opens a ticket in a ***database 106, such as, for example, an Oracle***

*database*.") (emphasis added), '683, 5:30-35 ("Those of ordinary skill in the art will appreciate that the hardware depicted in FIG. 5 [the monitoring server] may vary . . . . *[t]he depicted example is not meant to imply architectural limitations with respect to the invention.*") (emphasis added), '683, 6:22-30 ("Those of ordinary skill in the art will appreciate that the hardware in FIG. 6 [the help desk clients 110 and 112] may vary depending on the implementation . . . . *[t]he depicted example is not meant to imply architectural limitations with respect to the present invention.*") (emphasis added).) In fact, HP's proposed constructions for the so-called "three-tiered computing architecture" are even more generic than the computer hardware deemed insufficient in *Alice Corporation Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347, 2360 (2014). ("But what petitioner characterizes as specific hardware—a "data processing system" with a "communications controller" and "data storage unit," . . . is purely functional and generic . . . none of the hardware recited by the system claims 'offers a meaningful limitation beyond generically linking the use of the method to a particular technological environment'") (*quoting CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1291 (Fed. Cir. 2013)). The Court should therefore declare the '683 patent invalid.

### B.  '512 and '802 Patents

HP proposes constructions for ten terms from the two workflow patents ("repair workflow," "operation," "step," "transition," "binding," "repair run," "repair context," and "repair frame"), which are convoluted but do not change anything. (ECF No. 89, at 1-3.) Each of HP's proposed constructions embeds the constructions of multiple other separately-defined phrases and, just like the '683 patent discussed above, attempts to repeat or subsume language that already exists in the surrounding claim language. HP's attempt to use prolix and circular constructions to conceal the lack of any meaningful limitations should be rejected, because even if the Court adopted HP's proposals, the claims are still invalid.

In particular, HP's proposed constructions confirm that the "repair workflow" at the heart of the asserted claims is exactly what ServiceNow argued in its summary judgment briefing: "<u>a set of instructions</u> used by the system to resolve incidents." (ECF No. 89 at 1; ECF No. 80 at 2.) As discussed in the briefing, for hundreds if not thousands of years, people have used sets of

1  instructions to organize activities and address problems. (*See* ECF No. 80 at 1-2 (discussing the
2  application of workflows to the copying of scriptures by monks and HP's admitted application of
3  workflows to a wide variety of fields and applications).) The fact that a set of instructions might
4  be used to resolve an "IT incident" is simply an application of the abstract idea of writing and
5  following instructions, which does not pass muster under *Alice*. And HP's unnecessary
6  incorporation of "steps", "operations" and "transitions" into its proposed definition of "repair
7  workflow" (which are already separately recited in other claim language) does not alter this
8  conclusion because workflows, in their abstract form, contain steps, operations and transitions.
9  *See* ECF No. 80-3 at 2 (basic workflows involved "supervisors assign[ing] work and monitored
10 performance" (steps and operations) and "clerks passing the work from station to station"
11 (transitions)).
12     HP's proposed definitions of "steps", "operations" and "transitions," although lengthy,
13 add nothing technical that could transform the abstract idea into a patent-eligible invention. For
14 example, HP's proposed definition of "operation" states that "[o]perations contain inputs, results,
15 and responses," and then proceeds to define these terms in a non-technical fashion. (ECF No. 89,
16 at 1:11-15.) "Inputs," according to HP, "define the necessary information to perform a task.
17 Results are the information produced by executing the task. Responses define a finite set of
18 possible outcomes from the execution of the operation." (*Id.*) These purported definitions are
19 non-technical and would thus apply just as equally to a workflow involving monks copying
20 scriptures, or cooks following a recipe, as they would to resolving computer failures.
21     Plaintiff's proposed constructions for "repair run," "repair context" and "repair frame"
22 fare no better. HP concedes that a "repair run" is simply "[a]n execution of a repair workflow."
23 (ECF No. 89 at 2:8-9.) HP's proposed construction of "repair context" -- "a set of key-value pairs
24 containing data values discovered during a repair run can be pushed into a repair context" (*id*. at
25 2:12-13) – is simply a convoluted way of saying that the "context" includes data values used
26 during the performance of a workflow. Finally, while HP tries to muddle the construction of
27 "repair frame" with excess verbiage, at its core the "repair frame" ("a frame of execution in a
28 repair") (*id*. at 2:16-19) is merely describing an environment where the repair workflow is

executed or performed (e.g., the room in which the monks are working).

None of HP's proposed constructions recites any particular programming or any specific technical detail that would separate it from the abstract idea itself. This is unsurprising considering that the specification makes clear that the workflow system may be implemented using "a general-purpose computer" that "executes a set of instructions that are stored in one or more storage elements, in order to process input data." ('512, 12:20, 36-38.)

In summary, HP's proposed constructions actually confirm the ineligibility of the '802 and '512 patents because the claims merely recite the performance of the centuries-old practice of writing and following instructions to the management of incidents on generic computer hardware, an abstract idea that is plainly not patentable. *See Alice*, 134 S. Ct. at 2360 (2014) (claiming nothing significantly more than "an instruction to apply the abstract idea . . . using some unspecified, generic computer . . . . is not '*enough*' to transform an abstract idea into a patent-eligible invention."); *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1257 (Fed. Cir. 2013) ("recit[ing] the performance of some business practice known from the pre-Internet world along with the requirement to perform it" on a computer does not confer patent eligibility)

### C. The '229 Patent

One of the big challenges in understanding the '229 patent is its use of awkward and non-standard phraseology to describe basic – and abstract – concepts of organizing information into a hierarchy. This awkward terminology can convey the false impression that the patent covers something specific and narrow. HP's proposed constructions attempt to exploit this awkwardness through its constructions of "container definition node" and "derived container." But when one cuts through the coined terms, awkward terminology and generic computer structures that surround the '229 patent, all that remains is the abstract idea itself.

HP proposes to define "container definition node" as a "[d]ata structure having one or more attributes accessing an information repository and related to creating a hierarchy of information." (ECF No. 89 at 3:11-12.) HP's construction actually describes something quite simple – the "container definition node" is information that describes <u>what</u> information from the

information repository should be presented, and how to present it.[2]

The excerpt from Figure 9 (shown at the right) shows an exemplary container definition node and is useful for understanding HP's proposed construction and demonstrating why it, and the claims as a whole, cover nothing more than an abstract idea. "As illustrated in FIG. 9, a container definition node **900** is an object that comprises attributes related to creating a hierarchy of information." ('229, 10:24-26.) "Attributes" are simply pieces of information, and the exemplary container definition node in Figure 9 has three of them. The "Label" attribute (902) is exactly what its name implies – it specifies a textual label, "which is displayed to a user." ('229, 10:27-28.) The second attribute, "selection criteria" (904) is recited only in some of the asserted claims (and not claim 1, for example). It is used to specify what information will be retrieved and displayed. ('229, 7:12-15.) For example, the selection criteria attribute can tell the system to retrieve specified information from a database. ('229, 7:15-18, 8:59-61, 12:11-16.) The third attribute, "Display Information," just describes how the information will be displayed to the user. It can contain a string such as "Tab 1" to show that the information should be "tabbed over" once to the right when displayed. ('229, 11:10-12.)



And that's all there is to it – in the exemplary embodiment, the "container definition node" – which HP contends is a "[d]ata structure having one more attributes for accessing an information repository and related to creating a hierarchy of information" (ECF No. 89 at 3:11-12) – requires nothing more than a label for information, an identification of where that information comes from, and how the information should be displayed. Although the exemplary embodiment discussed above is an abstract idea in itself, the claims are even more abstract because they do not even require all three of these attributes, and nor does HP's proposed construction.

---

[2] ServiceNow has not conceded to the correctness of any of HP's proposed constructions for the '229 patent, but is willing to adopt them for purposes of this motion only in order to streamline the patent eligibility inquiry.

Which brings us to the "derived container," the other term for which HP has proposed a definition. The "derived container" gets its name from the fact that it was created from a corresponding "container definition node." ('229, 6:23-28 ("hence the term 'derived containers'").) The "derived containers" are how the information and instructions in the "container definition node" are used to display information for the user.

The relationship between the "container definition nodes" and "derived containers" is illustrated by a side-by-side comparison of Figure 12 on the left showing "container definition nodes," and Figure 8B on the right showing their corresponding "derived containers":



('229, Figs. 12 (left), 8B (right).)

Figure 12 (at left) shows a hierarchy of five container definition nodes for "Technical/Professional" jobs, while Figure 8B (at right) shows the five corresponding derived containers. ('229, 9:48-50, 10:57-62.) For example, each of the five derived containers (**828, 830, 832, 834, 836**) in Figure 8B inherited attributes from its corresponding container definition node. For example, the container definition nodes for "Computer" (**1202**) and "Electronics" (**1204**), in the middle layer in Figure 12, both have a display information attribute of "**Tab 1**." This is reflected in the corresponding derived containers for "**COMPUTERS**" (**830**) and "**ELECTRONICS**" (**836**) in Figure 8B, which are displayed as "tabbed" once to the right to indicate a second level in the hierarchy. ('229, 14:21-24.)

1    As this discussion makes clear, the idea behind the '229 patent is not a narrow and
2 specific one – it goes to the basic idea of organizing and displaying information in a hierarchical
3 fashion. The specification makes clear that the invention does not require use of computers, as it
4 can be "used with manually maintained information repositories such as index card files." ('229,
5 15:21-22.) Nothing in HP's proposed constructions changes that fact.

6    Federal courts have repeatedly held that patents directed to organizing information are
7 patent ineligible. *See, e.g.*, *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d
8 1344, 1351 (Fed. Cir. 2014) (invalidating under § 101 patent claim reciting "a process of taking
9 two data sets and combining them into a single data set, the device profile"); *CyberFone Sys.,*
10 *LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) ("the well-known
11 concept of categorical data storage, *i.e.,* the idea of collecting information in classified form, then
12 separating and transmitting that information according to its classification, is an abstract idea that
13 is not patent-eligible."); *Bascom*, 2015 WL 149480, at *10 (Illston, J.) (invalidating four patents
14 directed to "organizing a set of relationships between documents and storing that information
15 separate from the documents."); *Enfish LLC v. Microsoft Corp.*, --- F. Supp. 3d ----, No. 2:12-cv-
16 07360-MRP-MRW, 2014 WL 5661456, at *7 (C.D. Cal. Nov. 3, 2014) (invalidating two patents
17 for information management because the "claims are addressed to the abstract purpose of storing,
18 organizing, and retrieving memory in a logical table. This abstract purpose does not become
19 tangible because it is necessarily limited to the technological environment of computers.").

20    HP's proposed constructions also support the hypothetical presented at the January 29,
21 2015 hearing: organizing recipes in a recipe box based on categories of recipes. (*See* 01/29/2015
22 Tr. at 5:24-11:22.) Indeed, the '229 patent contemplates that the "information repository" can be,
23 like a recipe box, comprised of "index card files." ('229, 15:20-22.) In the recipe box example,
24 the "data structure" includes one or more attributes (e.g., names of recipe categories like desserts,
25 appetizers, entrees) that are related to hierarchy of information (e.g., the hierarchy of subject
26 matters in the Dewey Decimal System). With the derived container, the cook can use the recipe
27 box's data structure (e.g., the recipe cards and category dividers) to execute a query (e.g., look up
28 a recipe in the recipe box) based on an attribute (e.g., cookie recipes) from one or more

corresponding container definition nodes (e.g., the dessert recipe category). As with all of its proposed constructions, HP's constructions for the '229 patent provide no meaningful limitation that transforms the claims into "something more" than the abstract idea itself.

## II. CLAIM CONSTRUCTION IS UNNECESSARY TO RESOLVE SERVICENOW'S MOTION

HP never asserted in any of its briefing or in its conclusory expert declaration that any terms from the asserted claims required construction in order to resolve ServiceNow's motion. In fact, HP's counsel admitted at the January 29 hearing that no constructions were necessary for at least the '802 and '512 patents. (01/29/2015 Tr. at 56:22-24 (discussing the '802 and '512 Patents, HP's counsel stated: "There doesn't need to be claim construction because in fact those terms are defined within columns 2, 3 and 4.").) In a last ditch attempt to survive summary judgment, HP seeks to have a total of ten terms from the '802 and '512 Patents construed. (*See* ECF No. 89 at 1-3.) Moreover, after telling ServiceNow in its Patent L.R. 4-1 exchange that no terms from the '683 Patent needed to be construed, HP changed course and now seeks to construe the three hardware components recited in claim 32.

But HP's sudden change of heart about claim construction is of no moment, as the Federal Circuit has confirmed in numerous decisions that claim construction is not required to decide Section 101 invalidity issues early in the case. *See, e.g.*, *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, No. 2013-1588, 2014 WL 7272219, at *3 (Fed. Cir. Dec. 23, 2014) ("claim construction is not an inviolable prerequisite to a validity determination under § 101."); *Ultramercial, Inc. v. Hulu, Inc.*, 772 F.3d 709, 719 (Fed. Cir. 2014) ("the district court properly invoked section 101 to dismiss Ultramercial's infringement suit on the pleadings. No formal claim construction was required because the asserted claims disclosed no more than "an abstract idea garnished with accessories" and there was no 'reasonable construction that would bring [them] within patentable subject matter.'"); *Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) ("we perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

And in cases where the patent owner has suggested that claim construction is necessary, courts will often adopt the plaintiff's proposed constructions for purposes of the motion,

construing the terms in a manner most favorable to the patent owner, in order to resolve the Section 101 issues at an early stage of the case. *See, e.g., Content Extraction*, 2014 WL 7272219, at *4("even when construed in a manner most favorable to CET, none of CET's claims amount to significantly more than the abstract idea"); *Bascom Research*, at 7 ("adopting Bascom's proposed constructions does not alter the Court's conclusion that the patents-in-suit claim ineligible subject matter."). As explained above, HP's proposed constructions, even if adopted, would not make any of the asserted claims patent eligible.

### III. CONCLUSION

For the foregoing reasons and the reasons set forth in ServiceNow's briefing and oral argument, the Court should grant summary judgment and find that the '512, '802, '229 and '683 patents are invalid under 35 U.S.C. § 101.

Dated: February 13, 2015         COOLEY LLP

*/s/ Heidi L. Keefe*
Heidi L. Keefe
Attorneys for Defendant
ServiceNow, Inc.