# EXHIBIT A

Trials@uspto.gov                                          Paper 13
Tel: 571.272.7822                              Entered: July 21, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

SERVICENOW, INC.,
Petitioner,

v.

HEWLETT-PACKARD COMPANY,
Patent Owner.

_____

Case IPR2015-00523
Patent 6,321,229 B1

_____

Before JUSTIN BUSCH, JAMES B. ARPIN, and
BARBARA A. PARVIS, *Administrative Patent Judges.*

PARVIS, *Administrative Patent Judge*.

DECISION
Instituting *Inter Partes* Review
*37 C.F.R. § 42.108*

## I.    INTRODUCTION

### A.  Background

ServiceNow, Inc. ("Petitioner") filed a Petition (Paper 1, "Pet.") to institute an *inter partes* review of claims 8–10, 13, 15, and 17–20 (the "challenged claims") of U.S. Patent No. 6,321,229 B1 (Ex. 1001, "the '229 Patent") pursuant to 35 U.S.C. § 311.  Hewlett-Packard Company ("Patent Owner") filed a Waiver of Preliminary Response.  Paper 12.  Under 35

IPR2015-00523
Patent 6,321,229 B1

U.S.C. § 314, an *inter partes* review may not be instituted "unless . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a).

Petitioner contends that the challenged claims are unpatentable under 35 U.S.C. § 103 based on the following grounds (Pet. 3):

| References | Claims challenged |
|---|---|
| U.S. Patent No. 6,199,098 B1 ("Jones") (Ex. 1003) and Fox[1] | 8–10 and 13 |
| Jones, Fox, and U.S. Patent No. 6,151,630 ("Williams") (Ex. 1006) | 18–20 |
| Jones, Fox, and Forta[2] | 15 and 17 |

For the reasons set forth below, we determine that, on this record, Petitioner demonstrates a reasonable likelihood of prevailing in showing the unpatentability of the challenged claims.

### B. Related Proceedings

Petitioner identifies, as a related proceeding, a lawsuit in the United States District Court for the Northern District of California captioned *Hewlett-Packard Company v. ServiceNow, Inc.*, Case Number 14-CV-00570. Pet. 1.

### C. The '229 Patent

The '229 Patent pertains to a computer implemented system using an information model to organize an information repository into a hierarchy of

---

[1] DAVID FOX & TROY DOWNING, WEB PUBLISHER'S CONSTRUCTION KIT WITH HTML 3.2 (1996) ("Fox") (Ex. 1004).

[2] BEN FORTA ET AL., THE COLD FUSION WEB DATABASE CONSTRUCTION KIT (1997) ("Forta") (Ex. 1005).

IPR2015-00523
Patent 6,321,229 B1

information.  Ex. 1001, 1:7–11.  The hierarchy comprises derived containers that are generated in conformance with an information model comprising a hierarchy of container definition nodes.  *Id*. at 2:61–63.

### D. Illustrative Claims

Petitioner challenges claims 8–10, 13, 15, and 17–20 of the '229 Patent.  Pet. 1.  Claims 8, 17, and 18 are independent.  Ex. 1001, 16:16–33, 17:15–18:22.  Each of claims 9, 10, 13, and 15 depends directly from claim 8.  *Id*. at 16:34–41, 16:59–67, 17:5–10.  Each of claims 19 and 20 depends directly from claim 18.  *Id*. at 18:23–29.  Independent claim 8 is illustrative and is reproduced below.

8.     Apparatus for accessing an information repository, comprising:

    a.     a number of computer readable media; and

    b.     computer readable program code stored on said number of computer readable media, said computer readable program code comprising:

        i.     code for creating a hierarchy of derived containers, wherein a given derived container corresponds to:

            (1)     a container definition node of an information model, said information model comprising a hierarchy of container definition nodes; and

            (2)     a category of information stored in said information repository;

        ii.     code for displaying given ones of said derived containers to a computer user; and

        iii.     code for determining if a given one of said displayed derived containers has been selected by a computer user, and upon selection of said given one of said displayed derived containers, displaying contents of said given one of said displayed derived containers.

IPR2015-00523
Patent 6,321,229 B1

### E.  Claim Construction

#### 1.  Legal Standard

As a step in our analysis, we determine the meaning of the claims for purposes of this decision.  In an *inter partes* review, claim terms in an unexpired patent are interpreted according to their broadest reasonable construction in light of the specification of the patent in which they appear. 37 C.F.R. § 42.100(b); *see also In re Cuozzo Speed Techs., LLC.*, No. 2014-1301, 2015 WL 4097949, at *5–*8 (Fed. Cir. July 8, 2015) ("Congress implicitly approved the broadest reasonable interpretation standard in enacting the [America Invents Act (Pub. L. No. 112–29, 125 Stat. 284 (2011)) ('AIA')]," and "the standard was properly adopted by [United States Patent and Trademark Office ('USPTO')] regulation.").  Under the broadest reasonable construction standard, claim terms are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the entire disclosure.  *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).

#### 2.  Proposed Constructions

Petitioner identifies the following claim terms for construction.  Pet. 12–19.

| Claim Term in the '229 Patent | Proposed Construction |
| --- | --- |
| "information repository" | "[A] collection of information."  *Id*. at 12. |
| "information model" | "[I]nformation that defines a hierarchical organization for an information repository."  *Id*. at 13. |
| "container definition node" | "Information comprising attributes for creating a derived container."  *Id*. at 14. |
| "derived container" | "[I]nformation derived at least in part from a container definition node."  *Id*. at 17. |

IPR2015-00523
Patent 6,321,229 B1

| Claim Term in the '229 Patent | Proposed Construction |
|---|---|
| "selection criteria attribute" | "[A]n attribute that determines information that can be extracted at a derived container." *Id*. |
| "pointer" | "[A] piece of information that points to or references other information." *Id*. at 18. |

Patent Owner does not address Petitioner's proposed claim constructions in its Waiver of Preliminary Response.

On this record and for purposes of this Decision, we determine that Petitioner's proposed claim constructions for the terms "information repository," "information model," "selection criteria attribute," and "pointer" are the broadest reasonable interpretations of these terms. For example, the '229 Patent Specification describes an "information repository" as "hold[ing] a wealth and variety of information that can be accessed." Ex. 1001, 1:31–32. Regarding the term "information model," the '229 Patent Specification explains that "an information model can be created to define a hierarchy of information (also referred to as a hierarchy) for one or more information repositories to provide meaningful and easy access to information in the information repositories." *Id*. at 4:23–26. Regarding the term "selection criteria attribute," the '229 Patent Specification describes that a "selection criteria attribute" is used to "actually extract [records] from a database." *Id*. at 7:15–16.

Regarding the terms "container definition node" and "derived container," we agree with Petitioner to the extent that the '229 Patent Specification describes a "container definition node" as comprising attributes (*id*. at 10:24–26) and indicates that derived containers are generated in conformance with an information model comprising a hierarchy

5

IPR2015-00523
Patent 6,321,229 B1

of container definition nodes (*id*. at 4:4–7).  However, for the reasons set forth below, we are not persuaded that the term "container" is simply information (Pet. 14–17) and, instead, construe the term "container" for the purposes of this decision.

### 3.  *"container definition node" and "derived container"*

We start by determining the broadest reasonable interpretation of "container."  The Specification does not provide a definition of "container."  A technical dictionary sets forth a plain and ordinary meaning of "container" as follows: "[A]n element in the directory tree that can contain other containers, leaf objects or both.  The container commonly corresponds to a meaningful level of organization or administration, while the leaf corresponds to a specific network element."  DICTIONARY OF COMMUNICATIONS TECHNOLOGY: TERMS, DEFINITIONS AND ABBREVIATIONS (John Wiley & Sons Ltd. ed., 1998), *available at* http://search.credoreference.com/content/entry/wileycommtech/container/0 (Ex. 3001).  The dictionary definition of "container" is useful in ascertaining the way in which one of ordinary skill in the art would use this claim term.  *Starhome GMBH v. AT&T Mobility LLC*, 743 F.3d 849, 856–57 (Fed. Cir. 2014).

The technical dictionary definition is consistent with the '229 Patent Specification, which describes "derived containers" as follows: "derived containers are objects that can be selected to traverse a hierarchy (or to traverse a derived hierarchy)."  Ex. 1001, 7:37–39.  Additionally, the '229 Patent Specification describes "container definition node" as follows: "container definition node 900 is an object that comprises attributes related to creating a hierarchy of information."  *Id*. at 10:24–26.  The '229 Patent

IPR2015-00523
Patent 6,321,229 B1

Specification teaches that hierarchies may be "tree structures." *Id*. at 8:8–
13. Figures 11 and 12 illustrate exemplary hierarchies (*id*. at 3:46–49)
comprising parent nodes and child nodes (*id*. at 10:62–11:5).

As indicated above, Petitioner's constructions of the terms "container
definition node" and "derived container" are consistent with the '229 Patent
Specification, except that Petitioner's construction of "container" is too
broad. Accordingly, on this record and for purposes of this Decision, we
determine the following broadest reasonable interpretations: (1) "container
definition node" means "a container comprising attributes for creating a
derived container" and (2) "derived container" means "a container derived at
least in part from a container definition node." We further note that the
broadest reasonable interpretation of the term "container" within each of
these constructions is "an element in the directory tree that can contain other
containers, leaf objects, or both."

## II.   ANALYSIS

### A. *Overview*

A patent claim is unpatentable under 35 U.S.C. § 103(a) if the
differences between the claimed subject matter and the prior art are "such
that the subject matter[,] as a whole[,] would have been obvious at the time
the invention was made to a person having ordinary skill in the art to which
said subject matter pertains." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398,
406 (2007). The question of obviousness is resolved on the basis of
underlying factual determinations, including: (1) the scope and content of
the prior art; (2) any differences between the claimed subject matter and the

IPR2015-00523
Patent 6,321,229 B1

prior art; (3) the level of skill in the art;[3] and (4) objective evidence of
nonobviousness, i.e., secondary considerations.  *Graham v. John Deere Co.*,
383 U.S. 1, 17–18 (1966).

### B.  *Obviousness of Claims 8–10 and 13 over Jones and Fox*

Petitioner contends that each of claims 8–10 and 13 of the '229 Patent
is rendered obvious by the combined teachings of Jones and Fox.  Pet. 19–
45.

### 1.  *Jones*

Jones teaches a method and apparatus for navigating through
electronically stored information using an expandable hierarchical index or
table of contents ("TOC") in a hypertextual, client-server network
environment such as the World Wide Web ("Web").  Ex. 1003, Abstract.
Jones teaches that a computer may access a HyperText Mark-up Language
("HTML") document located elsewhere on the Web by formulating a
request encoded in Hypertext Transfer Protocol ("HTTP") and transmitting
the request across the network.  *Id*. at 1:50–58.  At the heart of the HTTP
request is a Uniform Resource Locator ("URL"), which is an address
identifying the computer which hosts the document.  *Id*. at 1:59–62.  The
host computer parses the HTTP request and responds by transmitting a copy
of the document to the requesting computer.  *Id*. at 1:63–66.

Jones teaches displaying TOC 100 on an end-user computer screen
that has been used to access a Web site in accordance with the method and

---

[3] Petitioner's declarant proposes a definition for a person of ordinary skill in
the art.  Ex. 1002 ¶ 10; *see id.* ¶ 11.  Patent Owner does not challenge
Petitioner's declarant's proposed definition and does not propose an
alternative.  To the extent necessary and for purposes of this Decision, we
adopt Petitioner's definition.

IPR2015-00523
Patent 6,321,229 B1

apparatus taught in Jones. *Id*. at 4:37–50. TOC 100 is for an on-line
Customer Support Library. *Id*. at 4:50–52. TOC 100 is expandable at the
end-user's request. *Id*. at 4:53–54. A display state of TOC 100 specifies
which entries or nodes within the hierarchy of TOC 100 are open and reveal
their children, and which nodes are closed and conceal their children. *Id*. at
5:2–5. Jones also teaches structural definition file 190, which is used to
represent a hierarchical TOC. *Id*. at 6:54–56.

### 2. *Fox*

Fox teaches a Web Publisher how to publish HTML pages on the
Web. Ex. 1004. Further, Fox teaches design fundamentals using HTML (*id*.
at 316) such as representing special and enhanced characters (*id*. at 317–
320), including section headings (*id*. at 322–24), formatting paragraphs and
line breaks (*id*. at 324–27), and formatting the style and font of text (*id*. at
327–37). Fox also teaches creating a table of contents. *Id*. at 361–63.

### 3. *Claim 8*

Petitioner contends (Pet. 19–38) that Jones teaches all of the
limitations of claim 8, except the recitation that a derived container
corresponds to a category of information stored in the information repository
(Ex. 1001, 16:22–27). For this recitation, Petitioner relies on the combined
teachings of Jones and Fox. Pet. 30–35.

#### a. *Analysis of Petitioner's Contentions Regarding Jones*

Regarding the preamble of claim 8, which recites "accessing an
information repository" (Ex. 1001, 16:16–17), Petitioner contends that the
collection of Web pages taught in Jones corresponds to the "information
repository" recited in claim 8. Pet. 21–23 (citing Ex.1003, 4:22–34, 4:50–
52). With respect to "accessing," Petitioner contends that Jones teaches

IPR2015-00523
Patent 6,321,229 B1

"creating a computer-based table of contents or 'TOC'" for accessing the information repository. *Id*. at 22 (citing Ex. 1003, 4:22–34).

At this stage in the proceeding, we are persuaded sufficiently by Petitioner's analysis regarding the preamble. As Petitioner notes (*id*. at 20), Jones is directed is to providing a hierarchical index or TOC in a hypertextual environment, such as the Web. Ex. 1003, Abstract. As Petitioner also notes (Pet. 22–23), Jones teaches generating a TOC for on-line documents, such as TOC 100 for an on-line Customer Support Library. Ex. 1003, 4:50–52.

We turn to Petitioner's analysis (Pet. 21–35) of the following recitations of claim 8: (1) "[program] code," (2) "for creating a hierarchy of derived containers," (3) "wherein a given derived container corresponds to [ ] a container definition node of an information model," and (4) "said information model comprising a hierarchy of container definition nodes" (Ex. 1001, 16:19–25). Starting first with the recitation in claim 8 of "program code" (Ex. 1001, 16:21), Petitioner contends that Jones teaches script program 180, which corresponds to "program code" that is recited in claim 8 because it generates a hierarchical TOC display using structure definition file 190. Pet. 26 (citing Ex. 1003, 5:51–55, 6:10–12, 6:16–17). On this record, we are persuaded by Petitioner that script program 180 of Jones teaches the claimed "program code."

We next consider the second recitation noted above, requiring that the program code "creat[e] a hierarchy of derived containers" (Ex. 1001, 16:22). Petitioner contends that generation of a Web page by script program 180 of Jones teaches this recitation. Pet. 26 (citing Ex. 1003, 5:51–55, 6:10–12, 6:16–17). Jones teaches "script program 180 dynamically generates HTML

IPR2015-00523
Patent 6,321,229 B1

Web page 145 specifying a hierarchical TOC display" (Ex. 1003, 5:52–54).

As to whether the hierarchical TOC of Jones teaches "derived containers" as

recited in claim 8 (Ex. 1001, 16:22), Jones indicates that the TOC is derived

from structural definition file 190 (Ex. 1003, 6:54–56, 7:28–54) and the

TOC comprises entries (*id*. at 4:54–56).  As to whether the entries of Jones

teach "containers" recited in claim 8, as discussed above, the broadest

reasonable interpretation of the term "container" is an element in a directory

tree that can contain other containers, leaf objects, or both.  Jones teaches

that the entries of the TOC may contain a "level of hierarchy directly below"

that entry i.e., "the hierarchical 'children'" of the entry (*id*. at 4:63–67).

Additionally, according to Jones, an entry in the TOC includes an "internally

assigned" hypertext link (*id*. at 4:57–58) that will be processed by an end-

user's browser in accordance with the HTTP protocol (*id*. at 4:56–63).

HTTP requests, for example, encode information.  *Id*. at 7:59.

Regarding the third recitation noted above, i.e., "wherein a given

derived container corresponds to [ ] a container definition node of an

information model" (Ex. 1001, 16:22–24), Petitioner provides a side-by-side

illustration of structure definition file 190 and the displayed TOC in Figure

1 E to show one-to-one correspondence, which is reproduced below.  Pet. 29

(citing Ex. 1003, 7:31, 7:39–54, Fig. 1E).

IPR2015-00523
Patent 6,321,229 B1



| Hierarchy of Container Definition Nodes – the "Nodes" from the Structure Definition File (190) | Hierarchy of Derived Containers – the Displayed Hyperlinked Entries From the Table of Contents (TOC) (100) |
|---|---|
| 1\|HW\|"Hardware"\|<br>[ * * * ]<br>1\|SW\|"Software"\|<br>2\|SWGEN\|"In General"\|<br>2\|SWOS\|"Operating Systems/Desktops"\|<br>2\|SWAPPS\|"Applications"\|<br>2\|SWLANG\|"Software Development"\|<br>2\|SWSTD\|"Standards"\|<br>3\|SWSTDVR\|"VRML"\|<br>4\|SWSTDVRPAP\|"White Papers"\|/Technology/whitepapers.html#VRML<br>3\|SWSTDGL\|"OpenGL"\|<br>3\|SWSTDINV\|"OpenInventor"\|<br>1\|GFX\|"Graphics"\|<br>1\|MM\|"Multimedia"\| | |

The example above illustrates a table in which the left side shows structure definition file 190, as taught by Jones (Ex. 1003, 7:31, 7:39–54), and the right side shows a displayed TOC of Jones (*id.* at Fig. 1E). Jones indicates that Petitioner accurately portrays Jones teachings.

Regarding the fourth recitation noted above, i.e., "said information model comprising a hierarchy of container definition nodes" (Ex. 1001, 16:24–25), Petitioner contends that structure definition file 190 corresponds to the "information model" recited in claim 8. Pet. 27–28 (citing Ex. 1003, 6:54–7:1, 7:10–16, 7:28–54). Jones teaches "structure definition file 190 includes the following fields for each node of the TOC hierarchy: LEVEL\|NAME\|LABEL\| (optional) URL." Ex.1003, 6:57–60. Again, we refer to the broadest reasonable interpretation of the term "container," which

IPR2015-00523
Patent 6,321,229 B1

is an element in a directory tree that can contain other containers, leaf objects or both.  Jones teaches "[t]he NAME field is [ ] used to encode the hierarchical relationship between nodes" (*id*. at 6:54–66) and the URL field is appropriate for "leaf nodes" (*id*. at 7:3–4).

At this stage of the proceeding, we are persuaded sufficiently by Petitioner's analysis.  Accordingly, on the present record, Petitioner has shown sufficiently that Jones teaches each of the limitations recited in claim 8 noted above, i.e., (1) "[program] code," (2) "for creating a hierarchy of derived containers," (3) "wherein a given derived container corresponds to [ ] a container definition node of an information model," and (4) "said information model comprising a hierarchy of container definition nodes" (Ex. 1001, 16:19–25).

Claim 8 recites two additional limitations: "code for displaying given ones of said derived containers to a computer user" and "code for determining if a given one of said displayed derived containers has been selected by a computer user, and upon selection of said given one of said displayed derived containers, displaying contents of said given one of said displayed derived containers" (Ex. 1001, 16:28–34).  Regarding the limitation in claim 8 that given ones of the derived containers are displayed (Ex. 1001, 16:28–29), consistent with Petitioner's analysis (Pet. 35–36) Jones teaches "FIG. 1E illustrates the display of an expandable TOC" (Ex. 1003, 4:8–9).  Regarding the limitation recited in claim 8 that, upon selection by a computer user, contents of the selected derived container are displayed (Ex. 1001, 16:30–34), consistent with Petitioner's contentions (Pet. 36–37), Jones teaches "if the end-user uses a cursor control device or the like to 'select' 'Hardware' entry 120, then . . . Hardware entry 120 has

IPR2015-00523
Patent 6,321,229 B1

now been 'opened' in the display, revealing the level of hierarchy directly below Hardware entry 120. . . i.e., the hierarchical 'children' 125" (Ex. 1003, 4:54–67).

Accordingly, on the present record Petitioner has shown sufficiently that Jones teaches each of the additional limitations recited in claim 8 noted above, i.e., "code for displaying given ones of said derived containers to a computer user" and "code for determining if a given one of said displayed derived containers has been selected by a computer user, and upon selection of said given one of said displayed derived containers, displaying contents of said given one of said displayed derived containers" (Ex. 1001, 16:28–34).

### b. Analysis of Petitioner's Contentions Regarding Fox

Petitioner relies on the combined teachings of Jones and Fox for the limitation recited in claim 8 that a derived container also corresponds to "a category of information stored in said information repository" (Ex. 1001, 16:22–27). Pet. 30–35. Petitioner points to the entry of "White Papers" relating to the VRML standard in Jones and contends that clicking on the string "|/Technology/whitepapers.html#VRML" would cause the browser to open the "whitepapers.html" document and display the "VRML" subsection. Pet. 32 (citing Ex. 1003, 7:48–49). Petitioner contends that Fox teaches that "the NAME is a standard feature of HTML and URLs" and "the NAME attribute reflects information stored in the actual HTML document to which the URL refers." Pet. 32–33 (citing Ex. 1004, 362–63).

Jones teaches a structure definition file having a "NAME field" for each node of the TOC hierarchy. Ex. 1003, 6:57–60. Additionally, Jones teaches that the structure definition file for generating TOC displays illustrated in Figures 1(A) through 1(E) includes the following string:

14

IPR2015-00523
Patent 6,321,229 B1

"4|SWSTDVRPAP|"White Papers"|/Technology/whitepapers.html#VRML."
*Id*. at 7:29–50.

Fox teaches a "hypertable of contents" entitled "Major World Religions," which includes a list of religions that are marked as links. Ex. 1004, 362. According to an example in Fox, "[w]hen someone clicks on the word Judaism in your table of contents they'll be warped to the appropriate section of your document." *Id*. Additionally, Fox teaches "[i]f the NAME attribute is also included [ ] you can begin reading a document from any particular point." *Id*. at 362–63.

Accordingly, on this record, Petitioner has shown sufficiently that the combination of Jones and Fox teaches that a derived container also corresponds to "a category of information stored in said information repository," as recited in claim 8 (Ex. 1001, 16:22–27).

### c. Whether Petitioner has Satisfied the Requirements for Combining the Teachings of Jones and Fox

Petitioner contends "Fox provides an express motivation" to use the NAME attribute by stating that it is "very useful." Pet. 34–35 (citing Ex. 1004, 361–63). According to Petitioner "this 'very useful' feature would allow Jones to provide a more granular Table of Contents by providing multiple URLs for a given document, each pointing to a different section or category within the document." *Id*. at 35 (citing Ex. 1004, 361–62). In reliance on Mr. Klausner, Petitioner contends, therefore, that "it would have been obvious to one of ordinary skill in the art to adapt these teachings of Fox to Jones." *Id*. at 34 (citing Ex. 1002 ¶¶ 82, 83). At this time, Petitioner's analysis is not rebutted by Patent Owner.

15

IPR2015-00523
Patent 6,321,229 B1

On this record and for purposes of this Decision, we determine that
Petitioner has articulated sufficient reasoning with a rational underpinning as
to why one of ordinary skill in the art would have combined the method and
apparatus for providing a hierarchical index in a hypertextual, client-server
environment (Ex. 1003, Title [54]) as taught in Jones, with the teachings of
Fox relating to a useful feature for publishing a hypertable of contents on the
Internet (Ex. 1004, 361–63). *See KSR*, 550 U.S. at 418 (citing *In re Kahn*,
441 F.3d 977, 988 (Fed. Cir. 2006)).

### d. Conclusion

Accordingly, we are persuaded that, on this record, Petitioner
demonstrates a reasonable likelihood of prevailing in showing the
unpatentability of independent claim 8.

### 4. Dependent Claims 9, 10, and 13

Each of claims 9, 10, and 13 depend directly from claim 8.  Each of
claims 9 and 10 recites further limitations on the contents of derived
containers (Ex. 1001, 16:34–41).  In particular, claim 9 recites "wherein the
contents of some derived containers comprise child derived containers, and
the contents of other derived containers comprise information extracted from
said information repository" (Ex. 1001, 16:34–37).  Petitioner points to
derived containers that comprise child derived containers, e.g., "'Software'
(130)" (Pet. 38 (citing Ex. 1003, 5:14–15, Fig. 1E)) and other containers that
comprise URL hyperlinks, e.g., "'White Papers' (140)" (*id*. at 39 (citing Ex.
1003, 7:48–49)).  Petitioner additionally points to teachings in Fox that
Petitioner contends further support that the URL hyperlinks contain
information extracted from the information repository.  *Id*. at 40 (citing Ex.

IPR2015-00523
Patent 6,321,229 B1

1004, 362–63).  On this record, we are persuaded by Petitioner's unrebutted contentions and evidence with respect to claim 9.

Claim 10 is similar to claim 9, except claim 10 recites that the contents comprise *both* child derived containers and information extracted from the information repository (Ex. 1001, 16:39–41).  Petitioner points to Jones teaching of "'VRML' from Figure 1E" (*id.* at 42–43 (citing Ex. 1003, 6:55–56, 7:10–27, Fig. 1E)).  On this record, we are persuaded by Petitioner's unrebutted contentions and evidence with respect to claim 10.

Claim 13 recites the following further limitations: "various ones of the container definition nodes forming said information model comprise pointers which establish a hierarchical relationship between said container definition nodes of said information model" and "said code for creating a hierarchy of derived containers determines the hierarchical relationship of said derived containers by referring to said information model" (Ex. 1001, 16:59–67).  In addition to Petitioner's contentions discussed above with respect to independent claim 8, Petitioner, for example, points to the "NAME" field taught in Jones.  Pet. 44 (citing Ex. 1003, 6:64–7:1).  Jones teaches, consistent with Petitioner's contentions (*id.*) that the "NAME" field is used "to encode the hierarchical relationships between nodes."  Ex. 1003, 6:65–66.  On this record, we are persuaded by Petitioner's unrebutted evidence with respect to claim 13.

Accordingly, we are persuaded that, on this record, Petitioner demonstrates a reasonable likelihood of prevailing in showing the unpatentability of claims 9, 10, and 13.

IPR2015-00523
Patent 6,321,229 B1

*C. Obviousness of Claims 18–20 over Jones, Fox, and Williams*

Petitioner contends that each of claims 18–20 of the '229 Patent is rendered obvious by the combined teachings of Jones, Fox, and Williams. Pet. 45–49.

*1. Williams*

Williams teaches facilitating browsing of Web pages. Ex. 1006, Abstract. In particular, Williams teaches navigation of Web pages using a system in which the users use a terminal and browser to request and obtain pages from a server, which are then displayed to the user on a display. *Id*. at 2:45–48. Williams further teaches that the server and browser may be co-located on the same computer. *Id*. at 2:62–63.

*2. Claim 18*

Independent claim 18 is the same as independent claim 8, except that claim 18 recites a computer performing method steps, each of which corresponds to a recitation in claim 8. *Compare* Ex. 1001, 18:7–22, *with id*. at 16:16–32. Petitioner contends that, to the extent that claim 18 is interpreted as requiring that the same physical computer perform each of the steps recited in claim 18, Williams explains that a server and browser may be co-located on the same computer. Pet. 47 (citing Ex. 1006, 2:62–63). Our review of Williams reveals that Williams teaches end-user terminals executing browser software to request Web pages. Ex. 1006, 2:39–48, Fig. 1. Additionally, Williams teaches that "the server and the browser may even be co-located on the same computer." *Id*. at 2:62–63.

Petitioner contends that adapting Williams teaching of a co-located server and browser to Jones would have been a predictable variation of Jones. Pet. 47 (citing Ex. 1002 ¶ 113). Additionally, Petitioner contends

18

IPR2015-00523
Patent 6,321,229 B1

that implementing a Web server and browser on the same computer was commonly employed to test new Web sites. *Id*. at 48 (citing Ex. 1002 ¶ 114). Petitioner's contentions are unrebutted. As to whether Petitioner has satisfied the requirements for combining the teachings of Williams with the combined teachings of Jones and Fox, we are persuaded that, on this record and for purposes of this Decision, Petitioner has articulated sufficient reasoning with a rational underpinning as to why one of ordinary skill in the art would have combined the teachings of Jones and Fox with Williams.

Accordingly, we are persuaded that, on this record, Petitioner demonstrates a reasonable likelihood of prevailing in showing the unpatentability of independent claim 18.

### 3.  *Claims 19 and 20*

Each of claims 19 and 20 depends directly from claim 18 and recites the same additional limitations recited in dependent claims 9 and 10, respectively. For the reasons discussed above with respect to claims 9 and 10, on this record and for purposes of this Decision, we are persuaded by Petitioner's unrebutted evidence with respect to claims 19 and 20. Accordingly, we are persuaded that, on this record, Petitioner demonstrates a reasonable likelihood of prevailing in showing the unpatentability of claims 19 and 20.

### D. *Obviousness of Claims 15 and 17 over Jones, Fox, and Forta*

Petitioner contends that each of claims 15 and 17 of the '229 Patent is rendered obvious by the combined teachings of Jones, Fox, and Forta. Pet. 49–60.

19

IPR2015-00523
Patent 6,321,229 B1

### 1. Forta

Forta teaches a creation of Web sites using a particular Web application development tool, referred to as Cold Fusion. Ex. 1005, 11. Cold Fusion uses Structured Query Language ("SQL") for database interaction. *Id*. at 117.

### 2. Claim 15

Claim 15 depends from claim 8 and further recites "wherein each of said derived containers inherits at least one attribute from its corresponding container definition node, said at least one attribute comprising a selection criteria attribute which determines the category of information stored in said information repository to which a derived container corresponds" (Ex. 1001, 17:5–10). Petitioner points to Jones's teaching of a LABEL field for teaching "each of said derived containers inherits at least one attribute from its corresponding container definition node," as recited in claim 15. Pet. 50 (citing Ex. 1003, 7:1–3) (emphasis omitted). Jones teaches that the LABEL field contains the text label that is displayed for a node. Ex. 1003, 7:1–3. On this record and for purposes of this Decision, we are persuaded by Petitioner's unrebutted contentions and evidence with respect to claim 15.

Petitioner, however, contends that Jones does not teach the "selection criteria attribute" as claimed. Pet. 51. Petitioner points to Forta's teaching of a template that allows a user to create a Web page that issues SQL "SELECT" statements to extract information from a database. Pet. 52 (citing Ex. 1005, 163–65). Forta teaches creating a dynamic Web page using a Cold Fusion template. Ex. 1005, 164. In particular, Forta teaches a sample Cold Fusion template including the following command: "SELECT FirstName, LastName, PhoneExtension FROM Employees." *Id*. According

IPR2015-00523
Patent 6,321,229 B1

to Forta, the resulting Web page is dynamically based on the contents of an "Employee" database. *Id*. at 163–64.

As to whether Petitioner has satisfied the requirements for combining the teachings of Forta with the combined teachings of Jones and Fox, Petitioner points to statements in Forta regarding the benefits of creating dynamic Web pages as compared to static Web pages. Pet. 53–54 (citing Ex. 1005, 11–12, 163–64); *see also id*. (citing Ex. 1002 ¶¶ 127–30) ("These statements [Ex. 1005, 11–12, 163–64] provide express motivations to adapt the teachings of Forta to Jones . . . [and] one of ordinary skill in the art would perceive no technological obstacle in making the combination."). Forta indicates that creating a dynamic Web page is "easier and more reliable" than modifying HTML code for a static Web page. Ex. 1005, 163. Consequently, we are persuaded that, on this record and for purposes of this Decision, Petitioner has articulated sufficient reasoning with a rational underpinning as to why one of ordinary skill in the art would have combined the teachings of Jones and Fox with Forta.

Therefore, on this record, we are persuaded that Petitioner has shown sufficiently that the combination of Jones and Forta teaches "wherein each of said derived containers inherits at least one attribute from its corresponding container definition node, said at least one attribute comprising a selection criteria attribute which determines the category of information stored in said information repository to which a derived container corresponds" (Ex. 1001, 17:5–10). Accordingly, on this record, we are persuaded that Petitioner demonstrates a reasonable likelihood of prevailing in showing the unpatentability of claim 15.

IPR2015-00523
Patent 6,321,229 B1

### 3.  Claim 17

Independent claim 17 is similar to independent claim 8, except it includes some additional limitations that are similar to limitations recited in dependent claims 9, 13, and 15.  For the reasons discussed above with respect to claims 8, 9, 13, and 15, we are persuaded that, on this record, Petitioner demonstrates a reasonable likelihood of prevailing in showing the unpatentability of claim 17.

## III.   CONCLUSION

For the foregoing reasons, based on this record, including the Petition and the Waiver of Preliminary Response, we are persuaded that the information presented in the Petition demonstrates a reasonable likelihood that claims 8–10, 13, 15, and 17–20 of the '229 Patent are unpatentable. Pursuant to 35 U.S.C. § 314(a) and on behalf of the Director (37 C.F.R. § 42.4), we institute an *inter partes* review as to claims 8–10, 13, 15, and 17–20 of the '229 Patent.  However, we have not made a final determination of the patentability of any challenged claim.

## IV.   ORDER

For the reasons given, it is:

ORDERED that, pursuant to 35 U.S.C. § 314(a) and 37 C.F.R. § 42.4, an *inter partes* review of the '229 Patent is instituted as to claims 8–10, 13, 15, and 17–20, on the following grounds:

> 1.  Claims 8–10 and 13, under 35 U.S.C. § 103(a), as obvious over the combined teachings of Jones and Fox;
>
> 2.  Claims 18–20, under 35 U.S.C. § 103(a), as obvious over the combined teachings of Jones, Fox, and Williams; and

IPR2015-00523
Patent 6,321,229 B1

       3.  Claims 15 and 17, under 35 U.S.C. § 103(a), as obvious over

         the combined teachings of Jones, Fox, and Forta;

     FURTHER ORDERED that we institute *inter partes* review on no

other ground other than those specifically granted above; and

     FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and

37 C.F.R. § 42.4, notice is given of the institution of a trial on the grounds of

unpatentability authorized above; the trial commences on the entry date of

this decision.

IPR2015-00523
Patent 6,321,229 B1


PETITIONER:

Heidi L. Keefe
Andrew C. Mace
Phillip Morton
COOLEY LLP
hkeefe@cooley.com
amace@cooley.com
pmorton@cooley.com

PATENT OWNER:

David Cavanaugh
Owen Allen
Joseph Haag
WILMER CUTLER PICKERING HALE AND DORR LLP
David.cavanaugh@wilmerhale.com
Owen.allen@wilmerhale.com
Joseph.haagg@wilmerhale.com
Evelyn.mak@wilmerhale.com