# Exhibit B

Trials@uspto.gov                          Paper 12
571-272-7822                              Entered: August 21, 2015


UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

SERVICENOW, INC.,
Petitioner,

v.

HEWLETT-PACKARD COMPANY,
Patent Owner.

_____

Case IPR2015-00702
Patent 7,890,802 B2

_____


Before RAMA G. ELLURU, JAMES B. ARPIN, and
JO-ANNE M. KOKOSKI, *Administrative Patent Judges.*

KOKOSKI, *Administrative Patent Judge.*


DECISION
Denying Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2015-00702
Patent 7,890,802 B2

## I. INTRODUCTION

ServiceNow, Inc. ("Petitioner") filed a Petition ("Pet.") to institute an *inter partes* review of claims 1–3, 5, and 15 of U.S. Patent No. 7,890,802 B2 ("the '802 patent," Ex. 1001). Paper 1. Hewlett-Packard Company ("Patent Owner") filed a Preliminary Response ("Prelim. Resp."). Paper 11. We have jurisdiction under 35 U.S.C. § 314.

Upon consideration of the Petition and Preliminary Response and the evidence of record, we determine that Petitioner has not established a reasonable likelihood of prevailing with respect to any of the challenged claims of the '802 patent. Accordingly, we deny the Petition and do not institute an *inter partes* review.

### A. Related Proceedings

The parties indicate that the '802 patent is involved in a district court action, in which Petitioner is a party, captioned *Hewlett-Packard Co. v. ServiceNow, Inc.*, Case No. 14-CV-00570-BLF (N.D. Cal.). Pet. 1; Paper 4, 2. Patent Owner also states that the District Court granted Petitioner's motion for summary judgment of invalidity under 35 U.S.C. § 101 for claims 1–3, 5, and 15 of the '802 patent. Prelim. Resp. 20; Ex. 2001, 1.

### B. The '802 Patent

The '802 patent, titled "System and Method for Automated and Assisted Resolution of IT Incidents," is directed to managing and resolving Information Technology ("IT") incidents related to IT infrastructure. Ex. 1001, 1:16–18. According to the '802 patent, the described system and method "facilitates resolution of IT incidents by creating repair workflows, storing the repair workflows in a repair workflow repository, and/or

IPR2015-00702
Patent 7,890,802 B2

subsequently, executing the repair workflows in the repair workflow repository." *Id.* at 2:38–42.

Figure 2 of the '802 patent is reproduced below:



FIG. 2

Figure 2 is a block diagram of a system for the automated and assisted resolution of IT incidents as described in the '802 patent. *Id.* at 1:65–67. Repair workflows are created at authoring module 202 by defining steps and connecting the steps with transitions. *Id.* at 5:40–42. Authoring module 202 also creates endpoints for the workflow, such as ERROR, RESOLVED, DIAGNOSED, and NO ACTION TAKEN. *Id.* at 5:51–55. Flow repository 204 stores and manages the repair workflows created by authoring module 202 by assigning workflows to a hierarchy of folders. *Id.* at 5:56–60. Flow repository 204 can name, rename, edit, export, import, and delete repair workflows and also enables a client device to search for repair workflows. *Id.* at 5:60–64. Repair orchestration module 206 executes the repair workflows by executing the code attached within the operations and transitions in the repair workflows, and "maintains the record details of the execution of repair workflows." *Id.* at 6:4–7, 16–18.

3

IPR2015-00702
Patent 7,890,802 B2

Remote action module 208 provides remote actions, such as scripts or code snippets, which are executed on a remote device.  *Id.* at 6:19–22. Repair workflows can be invoked manually using manual interface 210, which guides a user through the execution of the repair workflows.  *Id.* at 6:43–45.  Manual interface 210 also provides an interface for searching for a repair workflow in flow repository 204.  *Id.* at 6:66–67.  Programmatic interface 212 automatically invokes the execution of repair workflows.  *Id.* at 7:12–13.  Repair history and reporting module 214 stores the execution data and provides reports related to various parameters in an enterprise network, such as success rate of a repair workflow and average mean time to repair.  *Id.* at 7:24–35.

C.  *Illustrative Claims*

Petitioner challenges claims 1–3, 5, and 15 of the '802 patent.  Claims 1 and 15 are independent claims.  Claims 2, 3, and 5 depend from claim 1, which is reproduced below, as is independent claim 15:

> 1.    A computer implemented method for facilitating a user in defining a repair workflow for subsequent use in resolving information technology (IT) incidents, comprising:
>
> > facilitating the user in defining a plurality of steps of the repair workflow using a computing device, wherein facilitating the user in defining a plurality of steps comprises facilitating the users in defining a plurality of operations for the steps, and defining inputs and outputs of the operations;
> >
> > facilitating the user in defining a plurality of transitions between the steps, based at least in part on the outputs of the steps, using a computing device; and
> >
> > checking the defined repair workflow for correctness before being used to resolve an IT incident using a computing device, wherein checking the defined repair workflow for correctness includes verifying

4

IPR2015-00702
Patent 7,890,802 B2

> that each response of each step's operation has a transition to another step.

Ex. 1001, 13:2–19.

> 15. An article of manufacture comprising:
>
> a storage medium; and
>
> a plurality of programming instructions stored in the storage medium, and adapted to program an apparatus to enable the apparatus to:
>
> facilitate a user in defining a plurality of steps of a repair workflow using a computing device, wherein the repair workflow defines a plurality of operations for the steps, and inputs and outputs of the operations; and
>
> facilitate the user in defining a plurality of transitions between the steps, based at least in part on the outputs of the steps, using a computing device; and
>
> check the defined repair workflow for correctness before being used to resolve an IT incident using a computing device, wherein said check for correctness includes a verification that each response of each step's operation has a transition to another step.

*Id.* at 14:40–56.

D. *Applied References*

Petitioner applies the following references in its asserted grounds:

| Name | Description | Date | Exhibit |
|------|-------------|------|---------|
| Diener | U.S. 7,624,089 B2 | Nov. 24, 2009 | 1003 |
| Diener Provisional | U.S. Provisional App. No. 60/189988 | March 17, 2000 | 1004 |
| Best Practice | Office of Government Commerce, *Best Practice for Service Support* | 2000 | 1005 |

IPR2015-00702
Patent 7,890,802 B2

| Van der Aalst | Wil van der Aalst & Kees van Hee, *Workflow Management: Models, Methods, and Systems* | 1997 | 1006 |
|---|---|---|---|

### E.    *The Asserted Ground of Unpatentability*

Petitioner challenges the patentability of claims 1–3, 5, and 15 of the

’802 patent based on the following ground:

| References | Basis | Claims Challenged |
|---|---|---|
| Diener, Best Practice, and Van der Aalst | § 103(a) | 1–3, 5, and 15 |

## II.    ANALYSIS

### A.    *Claim Interpretation*

We interpret claims of an unexpired patent using the "broadest
reasonable construction in light of the specification of the patent in which
[the claims] appear[]." 37 C.F.R. § 42.100(b). The Board, however, may
not "construe claims during IPR so broadly that its constructions are
*unreasonable* under general claim construction principles. . . . '[T]he
protocol of giving claims their broadest reasonable interpretation . . . does
not include giving claims a legally incorrect interpretation.'" *Microsoft
Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (citation omitted). "Rather,
'claims should always be read in light of the specification and teaching in
the underlying patent'" and "[e]ven under the broadest reasonable
interpretation, the Board's construction 'cannot be divorced from the
specification and the record evidence.'" *Id.* (citations omitted).

6

IPR2015-00702
Patent 7,890,802 B2

For purposes of this Decision and based on this record, we make explicit the interpretation of the claim term "operation," as set forth in independent claims 1 and 15.

*"operation"*

Petitioner argues that the term "operation" should be interpreted to mean "a unit of work to be performed in the context of a repair workflow." Pet. 14. According to Petitioner, this interpretation "comes from an express definition in the specification." *Id.* (citing Ex. 1001, 3:38–39).

Patent Owner contends that "operation" should be interpreted as follows:

> A unit of work to be performed in the context of a repair workflow. Operations contain inputs, results, and responses. Inputs define the necessary information required to perform a task. Results are the information produced by executing the task. Responses define a finite set of possible outcomes from the execution of the operation. Steps and transitions use responses to link operations together in a repair workflow.

Prelim. Resp. 4–5. Patent Owner contends that this interpretation "is based on an explicit definition in the '802 specification." *Id.* at 5. Patent Owner notes that Petitioner's proposed interpretation includes the first sentence from the Specification's definition of "operation," but that, by not including "the remainder of the specification's express requirements," Petitioner "omit[s], without explanation, the express requirement that '[o]perations contain inputs, results, and responses,' where '[r]esults are the information produced by executing the task' and '[r]esponses define a finite set of possible outcomes from the operation.'" *Id.* at 7.

With respect to claim interpretation, "[u]sually [the specification] is dispositive; it is the single best guide to the meaning of a disputed term."

7

IPR2015-00702
Patent 7,890,802 B2

*In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1149 (Fed. Cir. 2012)
(citations omitted).  Claim terms should generally be given their ordinary
and customary meaning except "1) when a patentee sets out a definition and
acts as his own lexicographer, or 2) when the patentee disavows the full
scope of a claim term either in the specification or during prosecution."
*Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir.
2012).  "To act as its own lexicographer, a patentee must 'clearly set forth a
definition of the disputed claim term' other than its plain and ordinary
meaning."  *Id.* (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d
1359, 1366 (Fed. Cir. 2002)).

As recognized by both Petitioner and Patent Owner, the Specification
provides a definition of the term "operation."  *See* Pet. 14; Prelim. Resp. 4–
5; Ex. 1001, 3:37–55.  Based on our review of the parties' respective
positions and the Specification, we are persuaded that Patent Owner acted as
its own lexicographer by clearly defining "operation."  Petitioner's proposed
interpretation is incomplete and overbroad because it does not include the
Specification's explicit requirement that inputs, results, and responses are
contained within operations.

Accordingly, based on the record before us and in accordance with the
broadest reasonable interpretation in light of the Specification (Ex. 1001,
3:37–38, 44–45), we construe "operation" to mean "a unit of work,
containing inputs, results, and responses, to be performed in the context of a
repair workflow."

B.   *Obviousness over Diener, Best Practice, and Van der Aalst*

Petitioner contends that claims 1–3, 5, and 15 would have been
obvious under 35 U.S.C. § 103(a) over the combination of Diener, Best

IPR2015-00702
Patent 7,890,802 B2

Practice, and Van der Aalst. Pet. 17–60. Petitioner relies on a Declaration by Arthur T. Brody, Ph.D. ("the Brody Declaration," Ex. 1002) in support of its contentions. *Id.*

### 1. Overview of Diener

Diener is directed to a method and apparatus for temporal control of the process of provisioning communication services. Ex. 1003, 1:17–19. Diener defines "provisioning" as "accomplishing work processes necessary to provide communications service installation, configuration and management for various parties." *Id.* at 1:22–24. Diener describes designing a provisioning model to carry out a provisioning process, where the provisioning model "defines a state machine to manage the complexities of the provisioning process" and "incorporates mechanisms for controlling work process flow in time." *Id.* at 3:42–45. According to Diener, the provisioning model executes tasks (which can be external programs, scripts, or other codes) in order to carry out the provisioning process. *Id.* at 3:53–58.

Diener states that provisioning models can be developed using a model developer tool to assemble objects "representing state machine functions into desired workflow for accomplishing the desired provisioning work processes." *Id.* at 13:18–22. The model developer has a model developing screen with a menu bar, object tool bar, and workspace. *Id.* at 13:23–24. The object tool bar contains icons representing objects available for building models, where the objects are groups of state-machine operations that perform a particular logic function. *Id.* at 13:36–39. Objects "can be configured to accomplish a particular work process by associating" signal types, tasks, and other parameters. *Id.* at 39–42. Diener also describes workspaces in which users can construct provisioning models, and

IPR2015-00702
Patent 7,890,802 B2

which allow users to rearrange the sequence of objects "by mouse-clicking and mouse-dragging objects" to a desired location. *Id.* at 19:28–35, 42–44.

### 2. Overview of Best Practice

Best Practice is a book "that documents best industry practice for the support and delivery of IT services." Ex. 1005, 23.[1] Best Practice states that it is "concerned with ensuring that the Customer has access to the appropriate services to support the business functions." *Id.* at 27. Issues discussed in Best Practice include incident management, problem management, and configuration management. *Id.*

### 3. Overview of Van der Aalst

Van der Aalst is a "book about the management of business processes." Ex. 1006, 4. Van der Aalst states that it "presents a reference framework for defining processes and discusses analytical methods." *Id.* at 6. Topics discussed in Van der Aalst include the organization of workflows, modeling workflows, and developing workflow applications. *Id.* at 7.

### 4. Analysis

Petitioner contends that the combination of Diener, Best Practice, and Van der Aalst teaches all of the limitations of claim 1. Pet. 23–51. For example, Petitioner contends that Diener discloses the "wherein facilitating the user in defining a plurality of steps comprises facilitating the user in defining a plurality of operations for the steps" limitation of claim 1 because Diener describes a user interface in Figure 9 that assists a user in defining objects of a workflow. *Id.* at 29, 32. Petitioner contends that the "objects" described in Diener "meet the definition of 'steps' because they perform

---

[1] Citations to Exhibits 1005 and 1006 are to the numbers added to the bottom of each page of the exhibits, not those that are original to the publications.

IPR2015-00702
Patent 7,890,802 B2

functions ('operations') to carry out the workflow." *Id.* at 29.  Petitioner
also contends that, applying its proposed interpretation of the term
"operation," the "tasks" described in Diener "qualify as 'operations' because
they comprise the software to perform the actual work for the workflow."
*Id.* at 33.  Petitioner contends that Diener discloses inputs for the operations
because it describes signal arguments that can be input into the tasks that
"are made available to the task ('operation') and can be 'examin[ed]' and
'modif[ied]' by the task as desired by the user who creates the task." *Id.* at
35.  According to Petitioner, Diener also discloses outputs of the operations
when it describes a task that contains a code that sends a succeed or fail
signal.  *Id.* at 37.

Patent Owner argues that the Diener "tasks" do not "correspond to the
claimed 'operations,' because they do not have the requisite separate 'result'
and 'response' components" set forth in Patent Owner's proposed
interpretation of the term "operation."  Prelim. Resp. 19.  Patent Owner also
argues that signals that are output from the tasks in Diener "cannot be both a
'result' and 'response,'" because "a 'result' is the output of an operation,
which is then further processed to produce one or more responses." *Id.* at
19–20.

We are persuaded by Patent Owner that Petitioner has not established
that Diener teaches the "wherein facilitating the user in defining a plurality
of steps comprises facilitating the user in defining a plurality of operations
for the steps" limitation of claim 1.  As discussed above, under a broadest
reasonable interpretation consistent with the Specification, "operations" are
units of work, containing inputs, results, and responses, to be performed in
the context of a repair workflow. *See supra* Section II.A.  The Specification

11

IPR2015-00702
Patent 7,890,802 B2

states that "[i]nputs define the necessary information required to perform a task" (Ex. 1001, 3:45–46), "[r]esults are the information produced by executing the task" (*id.* at 3:48–49), and "[r]esponses define a finite set of possible outcomes from the execution of the operation" (*id.* at 3:51–52).

Petitioner does not direct us, with any specificity, to evidence demonstrating sufficiently that Diener teaches operations that contain information produced by executing the task ("results") and that also define a finite set of possible outcomes from the execution of the operation ("responses").  Petitioner points to Diener's statement that "[t]he doTask must contain code which sends a specific succeed or fail signal" as an example of an "output" of an operation, but does not state whether this output is a result or a response.  Pet. 37 (citing Ex. 1003, 14:67–15:2).  That Diener describes a task that can send a succeed or fail signal does not demonstrate that Diener discloses operations that are units of work, containing inputs, results, and responses, to be performed in the context of a repair workflow.  Petitioner does not rely upon Best Practice or Van der Aalst to teach this limitation.  Consequently, we are not persuaded that Petitioner has demonstrated that the combination of Diener, Best Practice, and Van der Aalst teaches the "wherein facilitating the user in defining a plurality of steps comprises facilitating the user in defining a plurality of operations for the steps" limitation of claim 1.

For these reasons, we are not persuaded that Petitioner has demonstrated a reasonable likelihood of showing that independent claim 1, and claims 2, 3, and 5 that depend therefrom, would have been obvious over the combination of Diener, Best Practice, and Van der Aalst.

IPR2015-00702
Patent 7,890,802 B2

Independent claim 15 includes method steps that are similar to the steps recited in claim 1. For example, claim 15 recites "facilitate a user in defining a plurality of steps of a repair workflow using a computing device, wherein the repair workflow defines a plurality of operations for the steps, and inputs and outputs of the operations." Ex. 1001, 14:45–48. Petitioner relies on the same teachings of Diener with respect to this limitation of claim 15 as it did for the similar limitation in claim 1. Pet. 59–60. Therefore, for the reasons set forth with respect to claim 1, we are not persuaded that Petitioner has demonstrated a reasonable likelihood of showing that claim 15 would have been obvious over the combination of Diener, Best Practice, and Van der Aalst.

## III. CONCLUSION

For the foregoing reasons, we are not persuaded that Petitioner has demonstrated a reasonable likelihood of showing that at least one of the challenged claims of the '802 patent is unpatentable based on the asserted ground.

## IV. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that the Petition is *denied*.

IPR2015-00702
Patent 7,890,802 B2

PETITIONER:

Heidi L. Keefe
Andrew C. Mace
Phillip E. Morton
Mark Weinstein
COOLEY LLP
hkeefe@cooley.com
amace@cooley.com
pmorton@cooley.com
mweinstein@cooley.com


PATENT OWNER:

Joseph J. Haag
Jason D. Kipnis
WILMER CUTLER PICKERING
HALE AND DORR LLP
Joseph.Haag@wilmerhale.com
Jason.Kipnis@wilmerhale.com